**PORTER HEDGES LLP**

Eric M. English
State Bar No. 24062714
Genevieve M. Graham
State Bar No. 24085340
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
eenglish@porterhedges.com
ggraham@porterhedges.com

**SMYSER KAPLAN & VESELKA, L.L.P.**

Garland D. Murphy IV
State Bar No. 24058010
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 221-2300
(713) 221-2320
lmurphy@skv.com

**ATTORNEYS FOR PENDER CAPITAL
ASSET BASED LENDING FUND I, LP**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| **MANSFIELD BOAT AND RV** § | |
| **STORAGE, LLC** § | Case No. 18-33926 |
| § | |
| Debtor. § | |

**PENDER CAPITAL ASSET BASED LENDING FUND I, LP'S EXPEDITED MOTION
FOR AN ORDER (I) TO ENFORCE THE COURT'S CASH COLLATERAL ORDER;
(II) FINDING THE DEBTOR AND ITS PRINCIPALS IN CIVIL CONTEMPT OF
COURT; AND (III) FOR SANCTIONS**

Pender Capital Asset Based Lending Fund I, LP ("Pender Capital") hereby files its Expedited Motion (the "Motion") for Pender Capital's Expedited Motion for an Order (i) to Enforce the Court's Cash Collateral Order; (ii) finding the Debtor and its Principals in Civil Contempt of Court; and (iii) for Sanctions Against Mansfield Boat and RV Storage, LLC (the "Debtor").

I.    **PRELIMINARY STATEMENT**

1.    The Debtor has ignored its obligations under the Court's Final Cash Collateral Order (defined below). The Debtor failed to make its $35,000 adequate protection payment to

7234371

Pender due in February and has also failed to provide the Argus monthly management reports and weekly budget variance reports. The Debtor has also failed to escrow with Pender 1/12 of the 2018 real property tax payments in February or March.

2. Based on these violations of the Court's orders, Pender Capital respectfully requests that this Court i) find the Debtor and its Principals in civil contempt for failing to comply with this Court's Final Cash Collateral Order; ii) require the Debtor to immediately comply with the Final Cash Collateral Order, and in particular to pay Pender capital its February adequate protection payment; iii) award Pender Capital its attorneys' fees incurred in the filing and prosecution of this Motion; and iv) impose coercive sanctions against the Debtor and its Principals of $1,000 per day until the Debtor's contempt is purged. The Debtor should be required to pay all of the foregoing amounts prior to payment of any professional fees or other administrative expenses.

3. Pender Capital seeks relief on an expedited basis as the Debtor has filed a motion to close this case.

## II. JURISDICTION

4. This Court has jurisdiction over civil contempt proceedings under 28 U.S.C. § 157 and 11 U.S.C. § 105. *In re Terrebone Fuel and Lube*, 108 F.3d 609, 612-13 (5th Cir. 1997); *In re Abacus Broadcasting Corp.*, 150 B.R. 925, 928 (Bankr. W.D. Tex. 1993). A civil contempt proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). *Kellogg v. Chester*, 71 B.R. 36, 38 (N.D. Tex. 1987).

## III. BACKGROUND

5. On the eve of foreclosure, on December 3, 2018, the Debtor filed this case to stop Pender Capital from foreclosing on the Debtor's real property.

6. The Debtor's general manager, signor of the Debtor's Chapter 11 Petition, Original Schedules, and Original SOFA, and the Debtor's prior owner is Larry Reynolds ("Mr. Reynolds"). The Debtor's Managing Member is B. Neil Ainsworth ("Mr. Ainsworth" and, together with Mr. Reynolds, the Debtor's "Principals"), who is the signor of the Debtor's Amended Schedules. [Docket Nos. 51 (Amended Schedules A/B), 52 (Amended Schedules E/F)].

7. On December 5, 2018, the Debtor filed its *Motion to Use Cash Collateral* (the "Cash Collateral Motion"). [Docket No. 7].

8. On December 10, 2018, Pender Capital filed its *Objection to the Debtor's Cash Collateral Motion*, [Docket No. 17], and its *Motion for Relief from the Automatic Stay* ("Motion for Relief from Stay"). [Docket No. 18].

9. On December 28, 2018, the Court entered its *Interim Order on Motion for Use of Cash Collateral* (the "Interim Cash Collateral Order"). [Docket No. 36].

10. On January 24, 2019, Pender Capital filed its *Amended Objection to Debtor's Motion for Authority to Use Cash Collateral* (together with the Objection the Debtor's Cash Collateral Motion, the "Objections"), [Docket No. 48], which pointed out that the Debtor had failed to comply with the Interim Cash Collateral Order.

11. On January 28, 2019, the Court held a hearing on the Cash Collateral Motion and the Motion for Relief from Stay.

12. On January 31, 2019, the Court held a hearing to announce its rulings on the Debtor's Motion to Use Cash Collateral, and Pender Capital's Motion for Relief from Stay and

Motion to Compel.¹ As to the Motion to Use Cash Collateral and Objections thereto, the Court ordered the Debtor to, among other things:

    1) pay Pender Capital $35,000.00 in February 2019 and each month thereafter;

    2) escrow 1/12th of the 2018 real property taxes with Pender Capital in February 2019 and each month thereafter; and

    3) provide all management and financial reports that it receives from its property management company to Pender Capital within one day of receipt and provide Pender Capital with cash expenditure reports on each Friday showing a comparison of the Debtor's actual income and expenses to the projected income and expenses in the Budget for the preceding week.

13. On February 5, 2019, the Court entered its *Order Regarding Pender Capital Asset Based Lending Funding I, LP's Emergency Motion, and Brief in Support, to Compel Production of Documents from the Debtor* (the "Order on Motion to Compel"), [Docket No. 57], which required the Debtor to

    1) on or before February 8, 2019, produce true and correct copies of all bank statements and checks written on Debtor bank accounts from December 2017 to present; and

    2) on or before February 8, 2019, produce true and correct copies of all correspondence and documents related to its alleged efforts with any potential lender involving a potential refinancing of the Pender Capital debt.

14. Although the Debtor filed a Notice of Term Sheet [Docket No. 58], the Debtor has never produced any other document to Pender Capital regarding a term sheet, or indications of interest, or any other document or communication that could evidence a possibility of

---

¹ Pender Capital filed its Motion to Compel on January 22, 2019, [Docket No. 41], to compel the Debtor to produce various documents requested through discovery related to the Debtor's Motion to Use Cash Collateral and Pender Capital's Motion for Relief from Stay.

refinancing Pender Capital's Debt. To date, Pender Capital has not received any document from the Debtor that was ordered to be produced by the Order on Motion to Compel.[2]

15. On February 25, 2019, the Court entered its *Order on Motion for Use of Cash Collateral* (the "Final Cash Collateral Order"). [Docket No. 61]. *See* Final Cash Collateral Order, attached as **Exhibit A**.

16. The Debtor has failed to comply with the Final Cash Collateral Order by failing to take any of the actions set forth above.

17. The Debtor—and the Debtor's principals—are therefore in contempt of the Final Cash Collateral Order.

### IV. RELIEF REQUESTED AND BASIS THEREFORE

18. There can be no dispute that the Debtor is in violation of the Final Cash Collateral Order. Additionally, the Debtor's Principals are liable for the Debtor's unauthorized use of cash collateral.

*The Debtor is in Contempt of this Court's Final Cash Collateral Order*

19. In a civil contempt proceeding, the moving party need only show (i) that a court order was in effect; (ii) the order required certain conduct by the respondent; and (iii) the respondent failed to comply with the court's order. *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). In this case, no genuine dispute exists regarding (i) the actions required of the Debtor by this Court's Final Cash Collateral Order; or (ii) the Debtor's failure to abide by such order. Accordingly, Pender Capital requests that this Court find the Debtor and its principals in civil contempt.

---

[2] On March 4, 2019, the day before Pender Capital's scheduled March 5, 2019 foreclosure, the Debtor filed its *First Amended Original Answer and Counterclaim and Application for Temporary Restraining Order and Temporary Injunction* (the "Answer and Counterclaim") in cause no. 048-305488-19, filed in the 48th Judicial District Court of Tarrant County, Texas (the "State Court Lawsuit") to, among other things, enjoin Pender Capital from foreclosing on March 5, 2019. Pender Capital removed the State Court Lawsuit to this Court on March 5, 2019, in adversary proceeding no. 19-3022.

7234371

20. The Final Cash Collateral Order required that Debtor i) pay Pender Capital $35,000.00 in February 2019; ii) escrow 1/2th of the 2018 *ad valorem* taxes; iii) provide Pender Capital all management or financial reports received from its property management company within one day of receipt; and iv) provide Pender Capital with weekly cash expenditure reports that show the Debtor's actual income and expenses to the projected income and expenses in the Budget for the preceding week.

21. To date, the Debtor has *never* provided Pender Capital with a weekly cash expenditure report showing actual versus projected budget comparison. The Debtor has not provided the January management report received from the Debtor's property management company. The Debtor has not escrowed with Pender Capital *any amounts* to cover *ad valorem* taxes and, in fact, Pender Capital is in process of paying the delinquent 2018 *ad valorem* taxes, which will include late penalties and interest. Finally, the Debtor has failed to pay Pender Capital the $35,000.00 that the Debtor was ordered to pay in February 2019.

22. There is no doubt that the Debtor is in violation—and contempt—of this Court's Final Cash Collateral Order.

*For its Contempt, the Debtor Should Compensate Pender Capital for its Damages*

23. A court may impose sanctions in civil contempt proceedings to (i) compensate a party for unnecessary injuries suffered and costs incurred because of the contemptuous conduct; and (ii) coerce compliance with the court's orders. *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d. 392, 400 (5th Cir. 1987).

24. Contempt damages awarded as a result of a court order violation are intended to be compensatory in nature and are to "[reimburse] the injured party for the losses and expenses

incurred because of his adversary's noncompliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976). The Court may order the payment of damages, including attorney's fees, from one party to another in civil contempt sanction. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). Where, as here, the contempt is for failure to comply with a cash collateral order, resulting in the unauthorized use of cash collateral, sanctions may be properly imposed on the Debtor's principals. *See Midwest Properties No. Two v. Big Hill Inv. Co.*, 93 B.R. 357, 362-63 (N.D. Tex. 1988) (stating that "all counsel in the Northern District of Texas have been placed on notice that proper sanctions can be imposed against those responsible for use of cash collateral . . . when there has been no compliance with Section 363(c)(2)."). *In re Koran Enterprises, Inc.*, 61 B.R. 321, 327 (Bankr. W.D. Mo. 1986);

25. Pender Capital has incurred damages as a direct result of the Debtor's contempt. Specifically, Pender Capital i) has never received its $35,000.00 Court-ordered payment in February 2019 and ii) Pender Capital was forced to incur attorney's fees in the filing and prosecution of this Motion.

26. Pender Capital therefore requests compensation for its damages that were the direct result of the Debtor's contempt. Pender Capital requests $35,000.00 plus Pender Capital's attorney's fees for the filing and prosecution of this Motion, in an amount to be determined at the hearing on this motion. Given the Debtor's unlawful use of cash collateral and its intentional violation of the Final Cash Collateral Order, the Court should order that the foregoing amounts be paid to Pender before the Debtor pays any administrative professional fee claims.

***Coercive Sanctions are Particularly Appropriate Since the Debtor Has Shown a Total Disregard for This Court's Orders***

27. A court may impose a prospective *per diem* sanction in order to coerce compliance with its orders. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990); *Alberti v.*

*Klevenhagen*, 46 F.3d 1347, 1360 (5th Cir. 1995). In determining an appropriate civil contempt sanction, the Court should consider: (i) the harm resulting from the non-compliance; (ii) the probable effectiveness of the sanction; (iii) the financial resources of the contemnor and the burden sanctions may impose; and (iv) the willfulness of the contemnor in disregarding the Court's order. *Lamar Fin. Corp.*, 918 F.2d at 567.

28. Here, each factor that the Court should consider in imposing civil contempt sanctions weighs in favor of *per diem* sanctions in order to coerce the Debtor's compliance. First, the harm resulting from non-compliance, as stated above, is that Pender Capital has suffered actual, quantifiable damages as a direct result of the Debtor's contempt. Pender Capital's only remedy to be made whole is the Debtor compensating Pender Capital for its damages. A second harm is that the Debtor has thus far maintained almost total disregard for this Court's Orders, showing a complete lack of respect for the Bankruptcy Court and the bankruptcy process. As this Court is well aware, the principal purpose of the Bankruptcy Code is to "grant a fresh start to the honest but unfortunate debtor." *Grogan v.* Garner, 498 U.S. 279, 286, 287 (1991). The Debtor has been given the opportunity to gain a fresh start and yet has consistently rebuked the process by failing to comply with even the most basic orders of the Court (i.e. send a simple comparison from the projected versus actual budget for the preceding week). Such a willful violation is exactly why coercive *per diem* sanctions are appropriate.

29. Second, a *per diem* sanction of $1,000 per day is enough to coerce the Debtor to finally comply with a Court order, but is not so much that the amount is punitive. Rather, the Debtor will be motivated to comply in order to avoid paying any additional amounts as a result of its contempt. The *per diem* amount will motivate the Debtor to compensate Pender Capital in a timely

8

7234371

manner, which will avoid the Debtor incurring *any per diem* sanctions. Put another way: if the Debtor timely complies, the Debtor will not incur *per diem* sanctions.

30. Third, the Debtor is still operating and has maintained, throughout the case, that it can pay the $35,000.00 amount per month. Accordingly, the Debtor should already be ready and able to pay the requested per diem amount.

31. Finally, as detailed above, there is no question that the Debtor's failure to comply with the Final Cash Collateral Order was willful. The Debtor has maintained that it can pay the $35,000.000 monthly payment, representing less than half of the pre-petition interest payment on a now matured loan. Additionally, the Debtor was ordered to send weekly cash expenditures that compare projected versus actual for the preceding week. Such reporting is clearly within the Debtor's control. Failure to send was the result of the Debtor's willful disregard for the Final Cash Collateral Order.

32. All factors therefore weigh in favor of *per diem* sanctions. Pender Capital requests that this Court enter *per diem* sanctions against the Debtor and its Principals in the amount of $1,000.00 per day.

### V.    CONCLUSION

33. Pender Capital respectfully requests that, prior to paying any further administrative expenses, including professional fees, this Court: i) find the Debtor and its Principals in civil contempt for failing to comply with this Court's Final Cash Collateral Order; ii) require the Debtor to immediately comply with the foregoing orders, and in particular to pay Pender capital its February adequate protection payment; iii) award Pender Capital its attorneys' fees incurred in the filing and prosecution of this Motion; and iv) impose coercive sanctions against the Debtor and its Principals of $1,000 per day until the Debtor's contempt is purged.

9

Dated: March 5, 2019

Respectfully submitted,

By: /s/ *Eric M. English*
Eric M. English
State Bar No. 24062714
Genevieve M. Graham
State Bar No. 24085340
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
eenglish@porterhedges.com
ggraham@porterhedges.com

and

Garland D. Murphy IV
State Bar No. 24058010
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 221-2300
(713) 221-2320
lmurphy@skv.com

**ATTORNEYS FOR PENDER CAPITAL ASSET BASED LENDING FUND I, LP**

## CERTIFICATE OF SERVICE

I certify that on March 5, 2019, a true and correct copy of the foregoing Motion for Contempt was served by CM/ECF and/or first Class United States Mail to all parties listed on the attached Service List.

*/s/ Eric M. English*
Eric M. English

10

7234371

**SERVICE LIST**

Debtor
Mansfield Boat and RV Storage, LLC
Attn: Larry Reynolds
605 Rutgers
Lancaster, TX 75134

Debtor's Counsel
Herman A. Lusky
Lusky & Associates PC
4925 Greenville Ave., Suite 715
Dallas, TX 75206
herman@lusky.com
mail@lusky.com

United States Trustee
United States Trustee
1100 Commerce Street
Room 976
Dallas, Texas 75242

20 Largest Unsecured Creditors
Glenn Snyder
627 Mercury Avenue
Duncanville, TX 75137

Parties Requesting Notice
Mansfield ISD
c/o Eboney Cobb
Perdue, Brandon, Fielder, Collins & Mott, L.L.P.
500 E. Border Street, Suite 640
Arlington, Texas 76010
email: ecobb@pbfcm.com

Elizabeth Weller
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Freeway, Suite 1000
Dallas, Texas 75207
dallas.bankruptcy@publicans.com
Counsel for Tarrant County

7234371