# United States Bankruptcy Court
# Northern District of Texas - Dallas Division

| **In re:**<br><br>**Mansfield Boat and RV Storage, LLC, Debtor** | **Case No. 18-33926-hdh7**<br><br>**Chapter 7** |
|---|---|

## <u>**Declaration of Larry Reynolds**</u>

I, Larry Reynolds, am of sound mind, more than 18 years old, and competent to give this affidavit based on personal knowledge and review of my records. I hereby state the following:

1. This declaration is submitted in connection with the Court's *Sua Sponte Order Regarding Hearings Set for November 30, 2021* [Docket No. 388] requiring a "sworn statement indicating whether he is a creditor or an equity interest holder in the Debtor."

2. <u>**I am not a creditor nor equity interest holder. I am a "party in interest" in this case.**</u>

3. This declaration is based on my personal knowledge and a review of my records.

4. Mansfield Boat and RV Storage, LLC ("Mansfield Boat") was formed on May 27, 2015 as a Texas Domestic Limited Liability Company. A true copy of its Certificate of Formation is attached as Exhibit A.

5. On June 5, 2015, an operating agreement concerning Mansfield Boat was executed and signed by Martha Reynolds, as managing member, and Larry Reynolds and Janice Reynolds, as non-management members. This document also shows that "Larry Reynolds and various family Trusts" held a seventy-five percent interest in Mansfield Boat. A true copy of the 2015 Operating Agreement is attached as Exhibit B.

6. On November 2, 2018, Martha Reynolds, managing member and CEO of the Mansfield Boat executed a Certificate of Corporate Resolution approving Mansfield Boat to borrow up to $10 million from Premier Bank and appoint Beeman Ainsworth to the role of managing member

and sole trustee of The Poyner Wilkins Generational Trust ("Generational Trust"). A true copy of the Certificate of Corporate Resolution is attached as Exhibit C.

7. On November 2, 2018, The Generational Trust executed an operating agreement concerning Mansfield Boat. A true copy of the 2018 Operating Agreement is attached as Exh. D.

8. In 2018, public filings with with the Texas Franchise Tax office list the Generational Trust as the owner of Mansfield Boat. A copy of these public filings are attached as Exhibit E.

9. On November 7, 2018, Martha A. Reynolds, Trustor and managing member of Mansfield Boat, transferred 100% member shares of Mansfield Boat to the Generational Trust. A true copy of the Amended Trustee Agreement is attached as Exhibit F. Though no document appears to have authorized the transfer, no party has challenged that such transferred has occurred. This same document designated Beeman Ainsworth as Trustee for the Generational Trust.

10. As of at least November 7, 2019, Larry J. Reynolds appears to have a beneficiary interest under the Generational Trust pursuant to the Amended Trust Agreement. Though the original trust document cannot be located, this amendment states:

> **Article II**
> **Distributions by the Trustees**
> **2.01 Distribution of Income: The Trustees shall, no less often than annually, apply for the benefit of Larry J. Reynolds, Settlor and any other beneficiaries in the amounts determined by the Trustee, or Substitute Trustee, in their absolute discretion, all of the net income of the Trust estate.**

Based on this language, Larry Reynolds is a beneficiary of the Generational Trust.

11. On December 3, 2018, Mansfield Boat filed chapter 11 voluntary petition in Case No. 18-33926-hdh11 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Larry Reynolds signed the Petition as the General Manager of the Debtor. A true copy of the Petition is attached as Exhibit G.

12. On the Debtor's Statement of Financial Affairs filed on December 18, 2020, Larry Reynolds is listed under Question 28 as being the General Manager of the Debtor as of the filing of the case with "0.00%" interest in the debtor. A true copy of the Statement of Financial Affairs is attached as Exhibit H.

13. I am not listed as a creditor in the Schedules filed by the Debtor on December 18, 2018. A true copy of the Original Schedules are attached as Exhibit I.

14. I am not listed as a creditor in the Amended Schedules filed by the Debtor on May 9, 2019. A true copy of the Amended Schedules are attached as Exhibit J.

15. The Poyner Wilkins Generational Trust is not listed anywhere on the above-described filings of the Debtor in this bankruptcy case.

16. Though I have no claim against the Debtor, I claim an interest in the Poyner Wilkins Generational Trust as a beneficiary, and as such, a party in interest to the Debtor.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge.**

**DATED: November 29th, 2021.**

_______________________
**Larry Reynolds**

**STATE OF TEXAS §**
**§**
**COUNTY OF TARRANT §**

**This instrument was acknowledged before me on November 29th, 2021, by Larry Reynolds.**

**Notary Public:**_______________________

**Printed Name:** Robert T Arwine

ROBERT ARWINE
NOTARY PUBLIC
STATE OF TEXAS
ID # 11398622
My Comm. Expires 10-29-2022

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2021, I served the attached Declaration of Larry Reynolds in accordance with the Court's Sua Sponte Order (Doc. 388) by electronic means to:

*Via CM/ECF and US Mail to Claimant(s)*:
Pender Capital Asset Based
Lending Fund I, LP
c/o Eric M. English,
eenglish@porterhedges.com
c/o Land Murphy,
lmurphy@skv.com
Porter Hedges LLP
Houston, TX 77002

*Via CM/ECF to Chapter 7 Trustee:*
Scott M. Seidel,
scott@scottseidel.com;
c/o Eric M. English,
eenglish@porterhedges.com
c/o Land Murphy,
lmurphy@skv.com
6505 W. Park Blvd., Suite 306
Plano, TX 75093

*And all those parties receiving electronic services in this bankruptcy proceeding.*

*/s / Warren V. Norred*
Warren V. Norred

I certify that I am filing this declaration on November 29, 2021, in accordance with Bankruptcy Rule 9011, in that I believe the factual contentions contained therein are warranted on evidence and presented for no improper purpose.

s/Warren V. Norred/
Warren V. Norred

Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300

**Certificate of Formation**
**Limited Liability Company**

**Filed in the Office of the Secretary of State of Texas**
**Filing #: 802222697 05/27/2015**
**Document #: 608656960002**
**Image Generated Electronically for Web Filing**

**Article 1 - Entity Name and Type**

The filing entity being formed is a limited liability company. The name of the entity is:

**Mansfield Boat and RV Storage L.L.C.**

**Article 2 – Registered Agent and Registered Office**

☐ A. The initial registered agent is an organization (cannot be company named above) by the name of:

**OR**

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

**Name:**
**Curtis W. Wallace**

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**1527 West Hwy 114**
**Suite 500 Grapevine TX 76051**

**Consent of Registered Agent**

☐ A. A copy of the consent of registered agent is attached.

**OR**

☑ B. The consent of the registered agent is maintained by the entity.

**Article 3 - Governing Authority**

☑ A. The limited liability company is to be managed by managers.

**OR**

☐ B. The limited liability company will not have managers. Management of the company is reserved to the members.

The names and addresses of the governing persons are set forth below:

| Manager 1: **Martha Ann Reynolds** | Title: **Manager** |
|---|---|
| Address: **605 Rutgers Drive Lancaster TX, USA 75134** | |

**Article 4 - Purpose**

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

**Supplemental Provisions / Information**

[The attached addendum, if any, is incorporated herein by reference.]

**Organizer**

The name and address of the organizer are set forth below.

**Martha Reynolds** **606 Rutgers Dr., Lancaster, Texas 75134**

**Effectiveness of Filing**

☑ A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

**Execution**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

**Martha Ann Reynolds**

Signature of Organizer

**FILING OFFICE COPY**

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT

This Limited Liability Company Operating Agreement is entered into as of the 06/05/2015,

**BETWEEN:** **Martha Reynolds** (the "Managing Member"), an individual with her main address located at:

605 Rutgers Drive
Lancaster, Texas 75134

**AND:** (the "Non-Managing Members") and indemnitor's, who are individuals and family trusts with their main address located at:

P.O. Box 750
Valdez, Alaska 99686

The Managing Member and the Non-Managing Members are referred to herein collectively as the "Members".

The Members have formed the Company by causing a Certificate of Formation (the "Certificate") conforming to the requirements of the Texas Revised Limited Liability Company Act (the "Act") to be filed in the Office of the Secretary of State for the State of Texas.

## 1. NAME, PURPOSE AND PRINCIPAL OFFICE OF COMPANY

### 1.1. Name

The name of the Company is Mansfield Boat and RV Storage, LLC. The affairs of the Company shall be conducted under such name or such other name as the Managing Member may, in their discretion, determine. Mansfield Boat and RV Storage L.L.C. hereby grants the Company the right, at no cost, to use the Mansfield Boat and RV Storage L.L.C., Mansfield Boat and RV Storage, and C and S Storage names for the term of the Company as set forth in Article 2.1 hereof.

### 1.2. Agreement

In consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members executing this Agreement hereby agree to the terms and conditions of this Agreement, as it may be amended from time to time. It is the express intention of the Members that this Agreement shall be the sole statement of agreement among them, and, except to the extent a provision of this Agreement expressly incorporates matters by express reference, this Agreement shall govern even when inconsistent with or different from the provisions of the Act or any other provision of law.

### 1.3. Purpose; Powers

a) Purpose. The primary purpose of the Company is to act as a special purpose entity to own and operate Mansfield Boat and RV Storage and C and S Storage located in the City of Mansfield, Texas 76063.

b) Powers. Subject to all of the terms and provisions hereof, the Company shall have all powers necessary, suitable or convenient for the accomplishment of the purpose of the Company, including, without limitation, the following:

   1) to purchase, sell, invest and trade in securities of every kind, including, without limitation, capital stock, limited partnership interests, bonds, notes, debentures, securities convertible into other securities, trust receipts and other obligations, instruments or evidences of indebtedness, as well as in rights, warrants and options to purchase securities;

   2) to make and perform all contracts and engage in all activities and transactions necessary or advisable to all the members out the purposes of the Company, including, without limitation, the purchase, sale, transfer, pledge and exercise of all rights, privileges and incidents of ownership or possession with respect to any Company asset or liability; the borrowing or lending of money and the securing of payment of any Company obligation by hypothecation or pledge of, or grant of a security interest in, Company assets; and the guarantee of or becoming surety for the debts of others; and

   3) Otherwise to have all the powers available to it as a limited liability company under the Act.

**1.4. Registered Office and Agent**

The initial address of the Company registered office in the State of Texas is 1527 West Highway 114, Suite 500, Grapevine, Texas 76051, and its initial agent at such address for service of process is Curtis Wallace. The Members may change the registered office and agent for service of process as they from time to time may determine.

**1.5. Principal Office**

The principal office of the Company shall initially be located at 605 Rutgers Drive, Lancaster, Texas 75134. The Managing Members may change the location of the principal office of the Company at any time.

**1.6. Definitions**

a) Additional Members. This term shall have the meaning ascribed to it in Paragraph 3.2.

b) Affiliate. With reference to any person, any other person controlling, controlled by or under direct or indirect common control with such person.

c) Agreement. This Operating Agreement of Mansfield Boat and RV Storage L.L.C., is a Texas limited liability company.

d) Assignee. This term shall have the meaning ascribed to it in Article 9.

e) Bankruptcy. A person or entity shall be deemed bankrupt if:

   1) any proceeding is commenced against such person or entity as debtor for any relief under bankruptcy or insolvency laws, or laws relating to the relief of debtors, reorganizations, arrangements, compositions or extensions and such proceeding is not dismissed within 90 days after such proceeding has commenced, or

    2) Such person or entity commences any proceeding for relief under bankruptcy or insolvency laws or laws relating to the relief of debtors, reorganizations, arrangements, compositions or extensions.

f) Book Value. This term shall have the meaning ascribed to it in Paragraph 6.2(a).

g) Capital Account. This term shall have the meaning ascribed to it in Paragraph 6.2(b).

h) Capital Commitment. This term shall have the meaning ascribed to it in Paragraph 5.1.

i) Capital Contribution. This term shall have the meaning ascribed to it in Paragraph 5.1(b).

j) Mansfield Boat and RV Storage LLC. The Company 100% carried interest in the income of any Funds.

k) Certificate. The Certificate of Formation of Mansfield Boat and RV Storage LLC, a Texas limited liability company.

l) Code. United States of America Internal Revenue Codes, as amended from time to time (and any corresponding provisions of succeeding law).

m) Defaulting Member. This term shall have the meaning ascribed to it in Paragraph 5.4(a).

n) Fiscal Quarter. This term shall have the meaning ascribed to it in Paragraph 6.2(c).

o) Fiscal Year. This term shall have the meaning ascribed to it in Paragraph 6.2(d).

p) Management Fee. The management fee receivable by the Company from any Funds.

q) Net Income or Net Loss. This term shall have the meaning ascribed to it in Paragraph 6.2(e).

r) Percentage Interest. This term shall have the meaning ascribed to it in Paragraph 9 and 10.

s) Sale or Exchange. This term shall have the meaning ascribed to it in this agreement.

t) Securities Act. United States Federal Code as amended from time to time.

u) Securities. Securities of every kind and nature and rights and options with respect thereto, including stock, notes, bonds, debentures, evidences of indebtedness and other business interests of every type, including interests in partnerships, joint ventures, proprietorships and other business entities.

v) TMP. This term shall have the meaning ascribed to it in Paragraph 13.16.

w) Termination Date. This term shall have the meaning ascribed to it in Paragraph 2.1.

x) Treasury Regulations. The Income Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

## 2. TERM AND TERMINATION OF THE COMPANY

### 2.1. Term

The term of the Company shall continue indefinitely unless sooner terminated as provided in Paragraph 2.2 or by operation of law or extended as provided in Paragraph 2.3. The last day of the term of the Company, as such may be extended as provided herein, is referred to herein as the "Termination Date."

### 2.2. Termination

The Company shall terminate prior to the end of the period specified in Paragraph 2.1 at the election of the Managing Members. The Managing Members shall deliver notice of such termination to the Non-Managing Members.

### 2.3. Extension of Term

The term of the Company may be extended by the Managing Members. The Managing Members shall provide notice of any such extension to the Non-Managing Members.

## 3. INITIAL MEMBERS; CHANGES IN MEMBERSHIP

### 3.1. Name and Address

The persons listed on Exhibit A are hereby admitted as Members of the Company. Exhibit A shall be amended from time to time to reflect changes in the membership of the Company (including the admission of Additional Members). Any such amended Exhibit A shall supersede all prior Exhibit A's and become part of this Agreement and shall be kept on file at the principal office of the Company.

### 3.2. Admission of Additional Members

Individuals involved in the activities of the Company may be admitted to the Company as additional members ("Additional Members") on such terms and conditions as shall be determined by the Members, in their sole discretion. Each Additional Member shall be admitted only if they shall have executed this Agreement or an appropriate amendment to it in which he agrees to be bound by the terms and provisions of this Agreement as they may be modified by that amendment. Admission of a new Member shall not cause the dissolution of the Company. As reflected on Exhibit A, the Managing Members Percentage Interests shall be equally diluted. Percentage Interest shall not be diluted) to the extent of Percentage Interests granted to any Additional Members. In the event the Additional Members have aggregate Percentage Interests of less than one percent at any time (whether by reason of a determination not to admit Additional Members or the withdrawal or failure to vest of an Additional Member), such shortfall shall revert to and be allocated equally among the Managing Members.

### 3.3. Death, Disability or Withdrawal of a Managing Member

a) In the case of a Managing Member's death, permanent physical or mental disability or withdrawal from the Company, the Company shall not dissolve or terminate, but its business shall be continued without interruption or without any break in continuity by the remaining Members, with the remaining substitute Managing Member continuing to serve as the sole Managing Member unless he appoints an additional Managing Member, in his sole discretion. Any deceased, disabled or withdrawn Managing Member (or the holder of his interest) shall become a Non-Managing Member, and the interest of such Managing Member shall become a Non-Managing Member's interest. Such former Managing Member or the holder of such interest shall have no right to participate in the management of the Company and no right to consent to or vote upon any matter, except as provided in Paragraph 13.7.

b) If such change in the former Managing Member's status shall result in multiple ownership of any Non-Managing Members interest, one or more trustees or nominees may be required to be designated to represent a portion of or the entire Non-Managing Members interest for the purpose of receiving all notices which may be given and all payments which may be made under this Agreement, and for the purpose of exercising all rights which such Non-Managing Member has pursuant to the provisions of this Agreement.

### 3.4. Withdrawal of a Member

a) Except with the consent of the Members, the interest of a Member may not be withdrawn from the Company in whole or in part except in the event of the death or declaration of legal incompetency of such Member and in such event only if the election to withdraw is given by the personal representative or representatives of such Member in writing to the Managing Members within two months after the date of the appointment of such personal representative or representatives, or within four months from the date of death or declaration of legal incapacity of such Member, whichever is earlier. In the event of such election to withdraw, the interest of such Member shall be withdrawn in its entirety and shall be valued as of the date of withdrawal pursuant to the provisions of Paragraph 12.2 and paid for in the manner hereinafter provided by this paragraph. The Managing Member shall be entitled, in their sole discretion, to make the distribution in respect of the interest of the withdrawing Member in cash, in kind or pursuant to a promissory note due upon termination of the Company, or in any combination thereof. If any distribution is to be made in kind and if such distribution cannot be made in full because of restrictions on the transfer of Securities or for any other reason, distribution may be delayed until an effective transfer and distribution may be made, and Securities that will be transferred in respect of the withdrawing Members interest shall be designated. Such designated Securities will nevertheless be subject to the full right and power of the Managing Member to deal with them in the best interests of the Company, including the right to substitute other Securities of equivalent value.

b) In the event of the withdrawal of any Member pursuant hereto, the Percentage Interests and Capital Accounts of the withdrawing Member and the remaining Members shall be appropriately adjusted, including any adjustments required as a result of any vesting provisions applicable to the withdrawing Members interest.

c) The withdrawal of a Member shall not be cause for dissolution of the Company.

## 4. MANAGEMENT, DUTIES AND RESTRICTIONS

### 4.1. Management

The Managing Member shall have the sole and exclusive control of the management and conduct of the operation and management of the Company. Any action shall, unless otherwise specified by the Members, require approval of all Members (or the sole remaining substitute Managing Member). The right, power and authority of the Managing Member to execute any document on behalf of the Company and to do any and all acts on behalf of the Company shall, subject to any specific limitations set forth in this Agreement and, include without limitation the following:

a) To cause the Company to perform the duties and exercise the rights of the general partner of any Funds.

b) To purchase, hold, sell or otherwise effect transactions in Securities (whether marketable or unmarketable) and other investments of the Company.

c) To incur indebtedness on behalf of the Company or funds.

d) To guarantee indebtedness on behalf of the Company or Funds.

e) To loan money to any of the Members upon such terms and conditions as the Managing Member may prescribe.

f) To deposit or hold Securities and other assets of the Company in the Company name or in such street or nominee names as may be determined from time to time by the Managing Member, at such securities firms, banks or depositories as shall be designated by the Managing Member. All withdrawals there from or directions with respect thereto shall be made on the signature of the Managing Member.

g) To provide management services or to designate an entity or entities to manage any Funds and to receive fees from the Fund and to enter into an agreement or agreements with such an entity or entities upon such terms and conditions as the Managing Member shall deem appropriate for the management of the Fund. Such an agreement or agreements may be entered into with firms or business entities controlled by or comprised of either or both Managing Members or an Affiliate of either or both Managing Members.

h) Generally, to perform all acts deemed by the Managing Member appropriate or incidental to the foregoing and to carry out the purposes and business of the Company or any Funds.

### 4.2. Conversion of Status as Managing Member

Any Managing Member who has become a Non-Managing Member shall not participate in the control, management and direction of the business of the Company or the Fund.

### 4.3. Liability of Members to the Company and the Other Members

No Member shall be liable to any other Member for honest mistakes in judgment or for action or inaction taken in good faith for a purpose that was reasonably believed to be in the best interests of the Company, or for losses due to such mistakes, action or inaction, or for the negligence, dishonesty or bad faith of any employee, broker or other agent of the Company; provided that such employee, broker or agent was selected, engaged or retained with reasonable care. Each Managing Member and, with the consent of the Members, a Non-Managing Member, may consult with counsel and accountants on matters relating to Company operations and financial affairs and shall be fully protected and justified in acting in accordance with the advice of counsel or accountants, provided that such counsel or accountants shall have been selected with reasonable care. Notwithstanding any of the for going to the contrary, the provisions of this Paragraph 4.3 shall not be construed so as to relieve (or attempt to relieve) any person of any liability incurred (i) as a result of recklessness or intentional wrongdoing, or (ii) to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, provided that this Paragraph 4.3 shall be construed so as to effectuate the provisions hereof to the fullest extent permitted by law.

### 4.4. Restrictions on the Members

a) Except with the consent of the Managing Member or as otherwise specifically permitted by this Agreement, no Member shall mortgage, encumber, pledge or otherwise dispose of his or her interest in the Company or in the Company assets or property or enter into any agreement as a result of which any other person shall have rights as a Member of the Company.

b) No Member may buy from or sell to the Company any Securities without the prior written consent of the Managing Member except purchases or sales explicitly permitted by this Agreement.

c) No Member shall do any act in contravention of this Agreement or the Funds Limited Partnership Agreement.

### 4.5. Additional Restrictions on Non-Managing Members

a) The Non-Managing Members shall take no part in the control or management of the operations of the Company nor shall Non-Managing Members have any power or authority to act for or on behalf of the Company as a result of this Agreement except as expressly authorized from time to time by the Members.

b) Except as otherwise required by law or as expressly provided herein, the Non-Managing Members shall have no rights to vote, call meetings of the Members or otherwise exercise any similar rights or powers.

### 4.6. Officers

The Managing Member may appoint such officers of the Company as they shall deem advisable and shall have the discretion to remove any officers at any time.

## 5. CAPITAL CONTRIBUTIONS

### 5.1. Capital Commitments and Membership Interests of the Members

Set forth opposite the name of each Member listed on Exhibit A attached hereto is such Members Capital Commitment to the Company and its percentage membership interest in the Company (Percentage Interest). Each Members Capital Commitment represents the aggregate amount of capital that such Member has agreed to contribute to the Company in accordance with the terms hereof in order to fund the Company capital commitment to the Fund. Exhibit A shall be amended from time to time to reflect any changes to the Capital Commitments and Percentage Interests of the Members.

a) The Managing Member shall provide at least 30 business days prior written notice of any required contribution to the capital of the Company, specifying the amount thereof. The Members shall make their contributions to the Company capital in cash, except as otherwise determined by the Managing Member (who may allow contributions in the form of promissory notes). No Member shall be required to contribute any amount in excess of such Members Capital Commitment (as such Capital Commitment may be increased pursuant to subparagraph (a)) without such Members written consent. Any capital contributions hereunder with respect to the Capital Commitments of the Members (each a Capital Contribution) shall be made in such amount as shall be specified by the Managing Member and any such contributions required hereunder shall be in proportion to the Members respective Capital Commitments.

b) In addition to the Capital Commitments set forth on Exhibit A, members shall make Capital Contributions (up to a maximum of $ 50,000.00) to fund any excess of the Company operating expenses in excess of any Management Fee. Founding members Percentage Interest shall not be increased as a result of such Capital Contributions.

### 5.2. Liability of the Members

a) Except as expressly set forth herein, or as otherwise required by law, no Member shall be liable for any debts or obligations of the Company.

b) Each Member acknowledges the obligation of the Company pursuant to the Limited Partnership Agreement of the Fund to contribute to the capital of the Fund cash or Securities to satisfy the Company clawback obligation to the Fund. Each Member agrees that, in the event the Company is required to make a clawback payment pursuant to the Limited Partnership Agreement of any Funds, he or she will return any or all distributions made to him or her pursuant to this Agreement attributable to the Company carried interest in the Fund as may be required to satisfy such obligation, with each Member being severally (but not jointly) liable, in proportion to their respective shares in such distributions.

### 5.3. Liability of Transferees

For purposes of this Agreement, any transferee of an interest in the Company, whether or not admitted as a substitute Member or treated as a transferee or successor in interest who has not been admitted as a substitute Member (an Assignee) hereunder, shall be treated as having contributed the amounts contributed to the Company by the transferor, as having received distributions made to the transferor, and as having been allocated any Net Income or Net Loss allocated to the transferor of the interest in the Company held by the transferee. In addition, the transferee shall be liable for the transferors' liability for future contributions to the Company. Notwithstanding the above, the transfer of an interest shall not relieve the transferor from any liability hereunder except to the extent that the transferee has actually made all contributions or payments required of the transferor.

### 5.4. Defaulting Members

a) If a Non-Managing Member fails to pay any amount which it is required to pay to the Company on or before the date when such amount is due and payable, such Non-Managing Member shall be deemed to be in default hereunder (a Defaulting Member), and written notice of default shall be given to such Non-Managing Member by the Managing Member. The Company shall be entitled to enforce the obligations of each Non-Managing Member to make the contributions to capital specified in this Agreement, and the Company shall have all remedies available at law or in equity in the event any such contribution is not so made. In the event of any legal proceedings relating to a default by a Defaulting Member, such Defaulting Member shall pay all costs and expenses incurred by the Company, including attorney's fees, if the Company shall prevail. Further, such Defaulting Member shall be obligated to pay the Company interest with respect to the amount of any capital contribution not made when required by this Agreement, with such interest commencing on the date such contribution is initially due and ending on the date such contribution is made to the Company. Such interest shall be calculated on the basis of the then current reference prime rate announced by the Wall Street Journal, or by any other US commercial bank with capital in excess of one hundred million dollars selected by the Managing Member, plus 2 percent per annum.

b) In addition to the remedies provided under Paragraph 5.4(a), if the Defaulting Member does not remedy a default in the payment of a required contribution within 90 business days of the receipt of the notice specified in Paragraph 5.4(a): (i) the Defaulting Member shall no longer have the right (if any) to vote on any Company matter, and (ii) if the Managing Member so elects, the other Members shall have the option to pay the remaining capital contributions of the Defaulting Member in accordance with any procedures and in such proportions as may be established by the Managing Member. In such event, such Defaulting Member shall be deemed to have withdrawn from the Company and to have forfeited its interest in the Net Income and Net Losses of the Company. Such Defaulting Member shall be entitled to receive only the amount of its Capital Account at the time of the default, with such amount payable, without interest, to the Defaulting Member upon the dissolution of the Company.

## 6.    CAPITAL ACCOUNTS AND ALLOCATIONS

### 6.1. Capital Accounts

A Capital Account shall be maintained on the Company books for each Member. In the event any interest in the Company is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

### 6.2. Definitions

Unless the context requires otherwise, the following terms have the meanings specified below for purposes of this Agreement:

a) Book Value. The Book Value with respect to any asset shall be the assets adjusted basis for federal income tax purposes, except as follows:

1) The initial Book Value of any asset contributed by a Member to the Company shall be the fair market value of such asset at the time of contribution, as determined by the contributing Member and the Company.

2) In the discretion of the Managing Member, the Book Values of all Company assets may be adjusted to equal their respective fair market values, as determined by the Managing Member, and the amount of such adjustment shall be treated as Net Income or Net Loss and allocated to the Capital Accounts of the Members, as of the following times: (A) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis capital contribution; and (B) the distribution by the Company to a Member of more than a de minimis amount of Company assets in connection with an adjustment of such Members interest in the Company.

3) The Book Values of all Company assets shall be adjusted to equal their respective fair market values, as determined by the Managing Member, and the amount of such adjustment shall be treated as Net Income or Net Loss and allocated to the Capital Accounts of the Members, as of the following times: (A) the date the Company is liquidated within the meaning of US Treasury Acts and Codes; and (B) the termination of the Company pursuant to the provisions of this Agreement.

4) The Book Values of the Company assets shall be increased or decreased to the extent required under US FASB codes in the event that the adjusted tax basis of the Company assets is adjusted.

5) The Book Value of a Company asset shall be adjusted by the depreciation, amortization or other cost recovery deductions, if any, taken into account by the Company with respect to such asset in computing Net Income or Net Loss.

b) Capital Account. An account maintained by the Company with respect to each Member in accordance with the following provisions:

The Capital Account of each Member shall be increased by:

1) the amount of money and the fair market value of any property contributed to the Company by such Member,

2) such Members share of Net Income (or items thereof) allocated to his Capital Account pursuant to this Agreement, and

3) any other amounts required by US FASB regulations, provided the Managing Member determines that such increase is consistent with the economic arrangement among the Members as expressed in this Agreement.

and shall be decreased by:

A) the amount of money and the fair market value of any property distributed by the Company (determined pursuant to Paragraph 12.2 hereof as of the date of distribution) to such Member pursuant to the provisions of this Agreement (net of any liabilities secured by such property that such Member is considered to assume or hold subject to for purposes of US FASB regulations and the IRS codes,

B) such Members share of or Net Loss (or items thereof) allocated to his Capital Account pursuant to this Agreement, and

C) any other amounts required by US FASB regulations, provided the Managing Member determines that such decrease is consistent with the economic arrangement among the Members as expressed in this Agreement.

c) Fiscal Quarter. The Fiscal Quarters of the Company shall begin on January, 01, April 01, and July 01, and October 01, and end on March 31, June, 30, September, 30 and December 31, respectively, except that the Company first Fiscal Quarter shall begin on the date of this Agreement and end on the next regular quarter end.

d) Fiscal Year. The Company first Fiscal Year shall begin on the date of this Agreement and end on December 31, 2015. Thereafter, the Company Fiscal Year shall commence on January 01 of each year and end on December 31 of such year or, if earlier, the date the Company terminated during such year. The Managing Member may at any time elect a different Fiscal Year if permitted by the Code and the applicable Treasury Regulations.

e) Net Income and Net Loss. The net book income or loss of the Company for any relevant period, as computed in accordance with federal income tax principles and as adjusted pursuant to the following provisions, under the method of accounting elected by the Company for federal income tax purposes. The Net Income or Loss of the Company shall be computed, inter alia, by:

1) including as income or deductions, as appropriate, any tax-exempt income and related expenses that are neither properly included in the computation of taxable income nor capitalized for federal income tax purposes;

2) including as a deduction when paid or incurred (depending on the Company method of accounting) any amounts utilized to organize the Company or to promote the sale of (or to sell) an interest in the Company, except that amounts for which an election is properly made by the Company under proper US FASB regulations, shall be accounted for as provided therein;

3) including as a deduction any losses incurred by the Company in connection with the sale or exchange of property notwithstanding that such losses may be disallowed to the Company for federal income tax purposes; and

4) Calculating the gain or loss on disposition of Company assets and the depreciation, amortization or other cost recovery deductions, if any, with respect to the Company assets by reference to their Book Value rather than their adjusted tax basis.

f) Percentage Interest. The Percentage Interest for each Member shall generally be as set forth on Exhibit A, as it may be amended from time to time. The sum of the Members Percentage Interests shall be 100 percent.

g) Sale or Exchange. A sale, exchange, liquidation or similar transaction, event or condition with respect to any assets (except realizations of purchase discounts on commercial paper, certificates of deposit or other money-market instruments) of the Company of the type that would cause any realized gain or loss to be recognized for income tax purposes under the Code.

**6.3. Allocation of Net Income or Loss**

a) All Net Income or Loss of the Company attributable to the Company investment in the Fund shall be allocated among the Members in proportion to their Capital Contributions used to fund such investment.

b) All Net Income or Loss attributable to the Company operations shall be allocated among the Members in proportion to their Percentage Interests; provided that the Managing Member may, in their discretion, determine to allocate up to 80% percent of Mansfield Boat and RV Storage LLC allocable share of the Net Income attributable to the net after

tax profit realized in a particular year to other Members. The Managing Member shall make any determination to make such an allocation within 2 months after the end of each Fiscal Year.

c) Any Net Income attributable to the Company operations shall be allocated among the Members previously allocated any cumulative Net Loss attributable to the Company operations in the reverse order of, and in proportion to, such previous allocations, with any such remaining Net Income being allocated entirely to Mansfield Boat and RV Storage LLC. Any Net Loss attributable to the Company operations shall be allocated entirely to all members to the extent of the sum of any cumulative Net Income previously allocated to specific members and any Capital Contributions made by the individual members to fund such Net Losses pursuant to Paragraph 5.1(c), with any such remaining Net Loss being allocated among the Members in proportion to their Capital Contributions (other than pursuant to Paragraph 5.1(c)). For this purpose, Net Income or Loss attributable to the Company operations shall mean the Management Fee received by the Company reduced by all expenses of the Company other than expenses directly attributable to the Company investment in any Funds or the Company operations, as determined by the Managing Member, in their discretion. Not withstanding the foregoing, if there is a change in control of Mansfield Boat and RV Storage LLC, the Managing Member may, in their discretion, allocate any Net Income attributable to the Company operations among the Members in the manner they deem appropriate.

## 7. EXPENSES

The Company will pay all costs and expenses incurred in connection with its activities. The Members shall be entitled to reimbursement by the Company for expenses incurred by them relating to the Company business, as determined by the Managing Members in their discretion.

## 8. DISTRIBUTIONS

### 8.1. Interest

No interest shall be paid to any Member on account of his interest in the capital of, or on account of his investment in, the Company.

### 8.2. Mandatory Distributions

Promptly upon receipt of any tax distributions from the Fund, the Managing Member shall distribute such tax distributions to the Members in proportion to their interests in the taxable income of the Company for the period to which such distributions relate.

### 8.3. Discretionary Distributions

The Managing Members may in their discretion make additional distributions of cash or Securities among the Members (not including any Defaulting Members).

a) The distribution pursuant to this Paragraph 8.3 shall be made among the Members as follows (with the source of a particular distribution being in the discretion of the Managing Members):

1) To indemnetors or other Members allocated Net Income pursuant to Paragraph 6.3(c), to the extent of and in proportion to their respective shares of the

cumulative amount of such undistributed Net Income allocated to them, to the extent attributable to any excess of the Management Fee received over the Company operating expenses (taking into account as current or projected expenses any payments of compensation to the Managing Member for their management of the Company if they are no longer employed by Mansfield Boat and RV Storage LLC.

2) Among the Members in proportion to their respective shares of the cumulative amount of undistributed Net Income attributable to the Company operations to the extent made from such undistributed Net Income.

3) Among the Members in proportion to their respective shares of the cumulative amount of undistributed Net Income attributable to the Company investment in any Funds to the extent made from such undistributed Net Income.

4) Among the Members in proportion to their Capital Contributions to the extent constituting a return of capital.

b) Immediately prior to any distribution in kind of Securities (or other assets) pursuant to any provision of this Agreement, the difference between the fair market value and the Book Value of any Securities (or other assets) distributed shall be allocated to the Capital Accounts of the Members as Net Income or Net Loss pursuant to Article VI.

c) Securities distributed in kind pursuant to this Paragraph 8.3 shall be subject to such conditions and restrictions as the Managing Members determine are legally required.

## 9. ASSIGNMENT OR TRANSFER OF MEMBERS INTERESTS

### 9.1. Restrictions on Transfer of Members Interests

No Member may sell, assign, pledge, mortgage or otherwise dispose of all or any portion of his interest in the Company without the consent of the Managing Member.

### 9.2. Opinion of Counsel

Notwithstanding any other provision of this Agreement, no transfer or other disposition of an interest in the Company shall be permitted until the Managing Member shall have received, or waived receipt of, an opinion of counsel reasonably satisfactory to them that the effect of such transfer or disposition would not:

a) result in a violation of the Securities Act;

b) require the Company to register as an investment company under the United States Investment Company CODE, as amended;

c) require the Company or any Fund to register as an investment adviser under the United States Investment Advisers ACT, as amended;

d) result in a termination of the Company for tax purposes, if such termination would have a material adverse effect on the Members;

e) result in a violation of any law, rule or regulation by the Members or the Company;

f) cause the Company to be characterized as a publicly traded partnership or materially increase the risk that the Company will be so characterized.

Such legal opinion shall be provided to the Managing Member by the Company counsel. All costs associated with such opinion shall be borne by the transferring Member.

**9.3. Violation of Restrictions**

In the event of any purported transfer or other disposition of any Members interest in the Company in violation of the provisions of this Article IX, without limiting any other rights of the Company, the Managing Member shall have the option, in their sole discretion, to treat the Member as having withdrawn from the Company and to purchase or cause the Company to purchase such Members interest for cash at a price equal to the value thereof determined by the Managing Member as of a date selected by them. In the event of purchase, the terminated Members and the remaining Members interests in the Company shall be appropriately adjusted, and the subject Member (and his purported transferee) shall have no further interest in the Company except to receive the purchase price, if any, for his interest as determined by the Managing Member. Such option must be exercised, if at all, by written notice to the affected Member (or his successor(s) in interest) given not later than 30 days after the Managing Member is advised in writing of the purported transfer or disposition, and the purchase or withdrawal shall be consummated on the date specified in such notice, which shall not be later than 90 days after it is given.

**9.4. Agreement Not to Transfer**

Each of the Members agrees with all other Members that he, she or it will not make any disposition of his, her or its interest in the Company, except as permitted by the provisions of this Article IX.

**9.5. Multiple Ownership**

In the event of any disposition which shall result in multiple ownership of any Members interest in the Company, the Managing Member may require one or more trustees or nominees to be designated to represent a portion of or the entire interest transferred for the purpose of receiving all notices which may be given and all payments which may be made under this Agreement and for the purpose of exercising all rights which the transferor as a Member had pursuant to the provisions of this Agreement.

**9.6. Substitute Members**

No transferee of a Members interest may be admitted to the Company as a substitute Member without the consent of the Members, which consent shall be subject to the sole discretion of the Members and shall not be subject to challenge by any transferor or transferee.

## 10. VESTING OF PERCENTAGE INTERESTS

**10.1. Vesting of Managing Members and [COMPANY NAME] Interests**

The Managing Member and Mansfield Boat and RV Storage LLC interests in the Company shall be 100 percent vested as of the date hereof.

**10.2. Vesting of Other Non-Managing Members and Additional Members Interests**

The interest in the Company of any Non-Managing Member and of any Additional Member shall vest in accordance with a vesting schedule (if any) established by the Managing Member for such other Non-Managing Member or Additional Member. Any amounts allocated Non-Managing Members or Additional Members that, for any reason, do not vest shall revert to the Members whose interest in such amounts were diluted by the original allocation of such amounts to such Non-Managing Member or Additional Member.

## 11. DISSOLUTION AND LIQUIDATION OF THE COMPANY

### 11.1. Liquidation Procedures

Upon termination of the Company in accordance with Article II:

a) The operations of the Company shall be wound up and the Company shall be dissolved. The Managing Member shall serve as the liquidator.

b) Distributions in dissolution may be made in cash or in kind or partly in cash and partly in kind.

c) The Managing Member shall use their best judgment as to the most advantageous time for the Company to sell investments or to make distributions in kind provided that any such sales shall be made as promptly as is consistent with obtaining the fair value thereof.

d) The proceeds of dissolution shall be applied to payment of liabilities of the Company and distributed to the Members in the following order:

1) to the creditors of the Company in the order of priority established by law;

2) to the Members, in respect of the positive balances in their Capital Accounts, after all Net Income or Net Loss arising upon the liquidation (including amounts arising in connection with a distribution of Securities) has been allocated among the Members.

## 12. FINANCIAL ACCOUNTING AND REPORTS

### 12.1. Tax Accounting and Reports

The Managing Member shall cause the Company tax returns and employment tax returns, to be prepared and delivered in a timely manner to the Non-Managing Members (but in no event later than 120 days after the close of each of the Company Fiscal Years).

### 12.2. Valuation of Securities and Other Assets Owned by the Company

a) Subject to the specific standards set forth below, the valuation of Securities and other assets and liabilities under this Agreement shall be at fair market value. In determining the value of the interest of any Member or in any accounting between the Members, no value shall be placed on the goodwill or the name of the Company. Upon dissolution of the Company, the Company name and any goodwill associated with the name shall be distributed to the members.

b) The following criteria shall be used for determining the fair market value of Securities.

1) Securities not subject to investment letter or other similar restrictions on free marketability:

A) If traded on one or more securities exchanges or traded on any stock exchange, the value of each Security shall be deemed to be the Security closing price as reported in the Wall Street Journal or another nationally recognized publication or service that reports such data for the valuation date.

B) If actively traded over-the-counter (but not on NASDAQ or NYSE), the value shall be deemed to be the closing bid price of such Security on the valuation date.

C) If there is no active public market, the Managing Member shall make a determination of the fair market value on the valuation date, taking into consideration developments concerning the issuing company subsequent to the acquisition of its Securities, the pricing of other private placements of Securities by the issuer, the price of the Securities of other companies comparable to the issuer, any financial data and projections of the issuing company provided to the Managing Member and such other factor or factors as the Managing Member may deem relevant.

2) In the case of Securities subject to legal or contractual restrictions on free marketability, appropriate adjustments to the value determined under Paragraph 12.2(b)(1) above shall be made to reflect the effect of the restrictions on transfer.

3) The value of the Company interest in any Funds shall be the fair market value of the Company interest in the Securities (and other assets) of the Fund.

4) If the Managing Member in good faith determines that, because of special circumstances, the valuation methods set forth in this Paragraph 12.2 do not fairly determine the value of a Security, the Managing Member shall make such adjustments or use such alternative valuation method as they deem appropriate.

### 12.3. Supervision; Inspection of Books

Proper and complete books of account of the entire scope of all operations of the Company shall be kept under the supervision of the Managing Member at the principal office of the Company. Such books shall be open to inspection by a Non-Managing Member, at any reasonable time, upon reasonable notice, during normal business hours.

### 12.4. Confidentiality

All information provided to Non-Managing Members under this Article XII shall be used by Non-Managing Members in furtherance of their interests as Non-Managing Members and, subject to disclosures required by applicable law, each Non-Managing Member hereby agrees to maintain the confidentiality of such financial statements and other information provided to Non-Managing Members hereunder.

## 13. OTHER PROVISIONS

### 13.1. Execution and Filing of Documents

The Managing Member shall execute and file a Certificate conforming to the requirements of the United States various business codes in the office of the Secretary of State of Texas and shall execute assumed name certificates or fictitious business name statements and file or cause such statement to be filed if required by Texas law.

### 13.2. Other Instruments and Acts

The Members agree to execute any other instruments or perform any other acts that are or may be necessary to effectuate and inure on the Company.

**13.3. Binding Agreement**

This Agreement shall be binding upon the transferees, successors, assigns and legal representatives of the Members.

**13.4. Governing Law**

This Agreement shall be governed by and construed under the laws of the State of Texas as applied to agreements among Texas residents made and to be performed entirely within Texas.

**13.5. Notices**

Any notice or other communication that a Member desires to give to another Member shall be in writing and shall be deemed effectively given upon personal delivery or upon deposit in any mail box, by registered or certified mail, postage prepaid, or upon transmission by telegram or telecopy, addressed to the other Member at the address shown in the exhibits attached to this Agreement or at such other address as a Member may designate by 30 days advance written notice to the other Members.

**13.6. Power of Attorney**

By signing this Agreement, each Non-Managing Member designates and appoints the Managing Member as its true and lawful attorney, in its name, place and stead to make, execute, sign and file such instruments, documents or certificates that may from time to time be required of the Company by the laws of the United States, the laws of the State of Texas or any other state in which the Company shall conduct its investment activities in order to qualify or otherwise enable the Company to conduct its operations in such jurisdictions; provided, however, that in no event shall the Managing Member be deemed to have the authority under this Paragraph 13.6 to take any action that would result in any Non-Managing Member losing the limitation on liability afforded hereunder.

**13.7. Amendment Procedure**

This Agreement (and any exhibits to this Agreement) may be amended only with the written consent of the Members. No amendment shall, however, (i) enlarge the obligations of any Member under this Agreement without the written consent of such Member, (ii) dilute the relative interest of any Member in the Net Income, Net Loss, distributions or capital of the Company without the written consent of such Member (except such dilution as may result from additional capital contributions from the Members or the admission of Additional Members as specifically permitted pursuant to this Agreement or as a result of a termination or withdrawal of a Non-Managing Member), or (iii) alter or waive the terms of this Paragraph 13.7 or Paragraphs 13.14 and 13.17. The Managing Member shall promptly furnish copies of any amendments to this Agreement and the Company Certificate to all Members.

**13.8. Effective Date**

This Agreement shall be effective on the date set forth in the first paragraph of this Agreement.

**13.9. Entire Agreement**

This Agreement constitutes the entire agreement of the Members and supersedes all prior agreements between the Members with respect to the Company.

**13.10. Titles; Subtitles**

The titles and subtitles used in this Agreement are used for convenience only and shall not be considered in the interpretation of this Agreement.

**13.11. Company Name**

The Company shall have the exclusive ownership and right to use the Company name (and any name under which the Company shall elect to conduct its entire operation as long as the Company continues.

**13.12. Exculpation**

Neither the Managing Member nor their Affiliates shall be liable to a Non-Managing Members or the Company for honest mistakes of judgment, for action or inaction taken reasonably and in good faith for a purpose that was reasonably believed to be in the best interests of the Company, for losses due to such mistakes, action or inaction, or to the negligence, dishonesty or bad faith of any employee, broker or other agent of the Company, the Managing Member or their Affiliates provided that such employee, broker or agent was selected, engaged or retained and supervised with reasonable care, provided that this Paragraph 13.12 shall not extend to any action which constitutes fraud, willful misconduct or gross negligence. The Managing Member may consult with counsel and accountants in respect of Company financial statements and all operations and be fully protected and justified in any action or inaction that is taken in accordance with the advice or opinion of such counsel or accountants, provided that they shall have been selected with reasonable care. Notwithstanding any of the foregoing to the contrary, the provisions of this Paragraph 13.12 and of Paragraph 13.13 hereof shall not be construed so as to relieve (or attempt to relieve) any person of any liability by reason of recklessness or intention al wrongdoing or to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Paragraph 13.12 and of Paragraph 13.13 to the fullest extent permitted by law.

**13.13. Indemnification**

The Company agrees to indemnify, out of the assets of the Company only, the Managing Member and their Affiliates (and their agents), to the fullest extent permitted by law and to save and hold them harmless from and in respect of all (a) reasonable fees, costs, and expenses paid in connection with or resulting from any claim, action or demand against the Managing Member, their Affiliates or any agent thereof, the Company or their agents that arise out of or in any way relate to the Company, its properties, business or finances and (b) such claims, actions and demands and any losses or damages resulting from such claims, actions and demands, including amounts paid in settlement or compromise of any such claim, action or demand; provided, however, that this indemnity shall not extend to conduct not undertaken in good faith nor to any fraud, willful misconduct or gross negligence. Any person receiving an advance with respect to expenses shall be required to agree to return such advance to the Company in the event it is subsequently determined that such person was not entitled to indemnification hereunder. Any indemnified party shall promptly seek recovery under any other indemnity or any insurance policies by which such indemnified party may be indemnified or covered or from any portfolio company in which the Company has an investment, as the case may be. No payment or advance may be made to any person under this Paragraph13.13 to any person who may have a right to any other indemnity (by insurance or otherwise) unless such person shall have agreed, to the extent of any other recovery, to return such payments or advances to the Company.

**13.14. Limitation of Liability of Members**

Except as otherwise expressly provided herein or as required by Texas law, no Member shall be bound by, nor be personally liable for, the expenses, liabilities or obligations of the Company in excess of the balance of such Members Capital Commitment to the Company.

**13.15. Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Tarrant County, Texas, in accordance with the rules, then obtaining, of the American Arbitration Association. Any award shall be final, binding and conclusive upon the parties. A judgment upon the award rendered may be entered in any court having jurisdiction thereof.

### 13.16. Tax Matters Partner

Larry Reynolds, Chief Financial Officer shall be the Company US Tax Matters Partner under the Code (TMP). The TMP shall have the right to resign by giving 30 days written notice to the Members. Upon the resignation, dissolution or Bankruptcy of the TMP, a successor TMP shall be elected by a majority in interest of the other Members. The TMP shall employ experienced tax counsel to represent the Company in connection with any audit or investigation of the Company by any taxing entity and in connection with all subsequent administrative and judicial proceedings arising out of such audit. The fees and expenses of such, and all expenses incurred by the TMP in serving as the TMP, shall be Company expenses and shall be paid by the Company. Notwithstanding the foregoing, it shall be the responsibility of the Members, at their expense, to employ tax counsel to represent their respective separate interests. If the TMP is required by law or regulation to incur fees and expenses in connection with tax matters not affecting each of the Members, then the TMP may, in his sole discretion, seek reimbursement from or charge such fees and expenses to the Members on whose behalf such fees and expenses were incurred. The TMP shall keep the Members informed of all administrative and judicial proceedings, as required by any Section of the US Code, and shall furnish a copy of each notice or other communication received by the TMP from the government entity to each Member, except such notices or communications as are sent directly to such Member by the government entity. The relationship of the TMP to the Members is that of a fiduciary, and the TMP has a fiduciary obligation to perform his duties as TMP in such manner as will serve the best interests of the Company and all of the Company Members. To the fullest extent permitted by law, the Company agrees to indemnify the TMP and his agents and save and hold them harmless from and in respect to all (i) reasonable fees, costs and expenses in connection with or resulting from any claim, action or demand against the TMP, the Managing Members or the Company that arise out of or in any way relate to the TMPs status as TMP for the Company, and (ii) all such claims, actions and demands and any losses or damages there from, including amounts paid in settlement or compromise of any such claim, action or demand; provided that this indemnity shall not extend to conduct by the TMP adjudged (i) not to have been undertaken in good faith to promote the best interests of the Company or (ii) to have constituted recklessness or intentional wrongdoing by the TMP.

### 13.17. Taxation as Company

The Managing Member, while serving as such, agree to use their best efforts to avoid taking any action that would cause the Company to be classified as other than a partnership L.L.C. for federal income tax purposes.

## 14. MISCELLANEOUS TAX COMPLIANCE PROVISIONS

### 14.1. Substantial Economic Effect

The provisions of this Agreement are intended to comply generally with the provisions of US Treasury Regulations and US Codes, and shall be interpreted and applied in a manner consistent with such Regulations; and, to the extent the subject matter thereof is otherwise not addressed by this Agreement, the provisions of US Treasury Regulations are hereby incorporated by reference unless the Managing Member shall determine that such incorporation will result in economic consequences inconsistent with the economic arrangement among the Members as expressed in this Agreement. In the event the Managing Member shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed or allocated or

the manner in which distributions and contributions upon liquidation (or otherwise) of the Company (or any Members interest therein) are effected in order to comply with such Regulations and other applicable tax laws, or to assure that the Company is treated as a partnership for tax purposes, or to achieve the economic arrangement of the Members as expressed in this Agreement, then, notwithstanding anything in this Agreement to the contrary, the Managing Member may make such modification, provided that it is not likely to have a material detrimental effect on the tax consequences and total amounts distributable to any Non-Managing Member pursuant to Articles VIII and XI as applied without giving effect to such modification. The Managing Member shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Members and the amount of Company capital reflected on the Company balance sheet, as computed for book purposes pursuant to this Agreement, in accordance with all FASB Regulations , and (ii) make any appropriate modifications in the event unanticipated events (such as the incurrence of nonrecourse indebtedness) might otherwise cause the allocations under this Agreement not to comply with US Treasury Regulations, provided in each case that the Managing Member determine that such adjustments or modifications shall not result in economic consequences inconsistent with the economic arrangement among the Members as expressed in this Agreement.

**14.2. Income Tax Allocations**

a) Except as otherwise provided in this paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated there under, income, gain, loss, deduction, or credit of the Company for income tax purposes shall be allocated in the same manner the corresponding book items are allocated pursuant to this Agreement.

b) In accordance with US FASB regulations and the US Treasury Regulations thereunder, income, gain, loss and deduction with respect to any asset contributed to the capital of the Company shall, solely for tax purposes, be allocated between the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its initial Book Value.

c) In the event the Book Value of any Company asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under US Codes, FASB regulations and the Treasury Regulations thereunder.

**14.3. Withholding**

The Company shall at all times be entitled to make payments with respect to any Member in amounts required to discharge any obligation of the Company to withhold or make payments to any governmental authority with respect to any federal, state, local or other jurisdictional tax liability of such Member arising as a result of such Members interest in the Company. Any such withholding payment shall be charged to the Members Capital Account.

**IN WITNESS WHEREOF, the Members have executed this Agreement as of the date of June 05, 2015 above written.**

**MANAGING MEMBER**

Authorized Signature
Martha Reynolds

Authorized Signature

Print Name and Title

**NON-MANAGING MEMBERS**

Authorized Signature
Larry Reynolds CFO

Authorized Signature

Janice Reynolds VP
Print Name and Title

**EXHIBIT A**

MEMBERS CAPITAL COMMITMENTS AND PERCENTAGE INTERESTS

Name/Address Capital Commitment Percentage Interest

Martha Reynolds $ 35,000.00 20%

Managing Member:

Martha Reynolds 20%

Non-Managing Members:

Janice Reynolds 5%

Anticipated Additional Non-Managing Members

Larry Reynolds and various family Trusts 75%

The aggregate Capital Commitments and Percentage Interests of the Additional Members are based on the anticipated admission of such Additional Members. Any Percentage Interests that remain unallocated to Additional Members for any reason shall be allocated to the Managing Members (to be shared equally between them), and the corresponding Capital Commitment obligation shall become an obligation of the Managing Members (such obligation being shared equally between them).

Exhibit C

November 2, 2018

Mansfield Boat and RV Storage LLC
Attn.: Beeman Ainsworth
2521 E. Mountain Village Parkway
Suite 225
Wasilla, Alaska 99654

**OBJECT: CERTIFICATE OF CORPORATE RESOLUTION**

I, Martha Reynolds, managing member and CEO of Mansfield Boat and RV Storage LLC, do hereby certify that at a duly constituted meeting of the Member and Directors of the Corporation held at 305 Smith Street, Mansfield, Texas 76063 on 11/02/2018, it was upon motion duly made and seconded, that it be VOTED:

> That Mansfield Boat and RV Storage LLC has approved borrowing authority of up to $ 10,000,000.00 from Premier Bank and the local economic development corporation

It was upon motion made and seconded that it be further VOTED:

> That Beeman Ainsworth, shall assume the role of Managing Member of the corporation and sole trustee of The Poyner Wilkins Generational Trust and be empowered and directed to execute, deliver and accept any and all documents reasonably required to accomplish the foregoing vote, all on such terms and conditions as he in his discretion deems to be in the best interests of the Corporation.

I further certify that the foregoing votes are in full force without rescission, as modification or amendment.

Sincerely Board of Directors,

Martha Reynolds, past managing member
Director

Janice Reynolds, Director

Beeman Ainsworth, Managing Member and Trustee
director

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT

This Limited Liability Company Operating Agreement is entered into as of the 2th day of November, 2018.

**BETWEEN:** **Beeman Ainsworth** (the "Managing Member"), an individual with his main address located at:

2521 E. Mountain Village Parkway, Suite 225
Wasilla, Alaska 99686

**AND:** (the "Non-Managing Members") and indemnitor's who are individuals and family trusts with their main address located at:

P.O. Box 750
Valdez, Alaska 99686

The Managing Member and the Non-Managing Members are referred to herein collectively as the "Members".

The Members have formed the Company by causing a Certificate of Formation (the "Certificate") conforming to the requirements of the Texas Revised Limited Liability Company Act (the "Act") to be filed in the Office of the Secretary of State for the State of Texas.

## 1. NAME, PURPOSE AND PRINCIPAL OFFICE OF COMPANY

### 1.1. Name

The name of the Company is Mansfield Boat and RV Storage L.L.C. The affairs of the Company shall be conducted under such name or such other name as the Managing Member may, in their discretion, determine. Mansfield Boat and RV Storage L.L.C. hereby grants the Company the right, at no cost, to use the Mansfield Boat and RV Storage L.L.C., Mansfield Boat and RV Storage, and C and S Storage names for the term of the Company as set forth in Article 2.1 hereof.

### 1.2. Agreement

In consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members executing this Agreement hereby agree to the terms and conditions of this Agreement, as it may be amended from time to time. It is the express intention of the Members that this Agreement shall be the sole statement of agreement among them, and, except to the extent a provision of this Agreement expressly incorporates matters by express reference, this Agreement shall govern even when inconsistent with or different from the provisions of the Act or any other provision of law.

### 1.3. Purpose; Powers

a) Purpose. The primary purpose of the Company is to act as a special purpose entity to own and operate Mansfield Boat and RV Storage and C and S Storage located in the City of Mansfield, Texas 76063.

b) Powers. Subject to all of the terms and provisions hereof, the Company shall have all powers necessary, suitable or convenient for the accomplishment of the purpose of the Company, including, without limitation, the following:

1) To have all the powers available to it as a limited liability company under the Act.

**1.4. Registered Office and Agent**

The initial address of the Company registered office in the State of Texas is 1527 West Highway 114, Suite 500, Grapevine, Texas 76051, and its initial agent at such address for service of process is Curtis Wallace. The Managing Member may change the registered office and agent for service of process as they from time to time may determine.

**1.5. Principal Office**

The principal office of the Company shall initially be located at 305 Smith Street, Mansfield, Texas 76063. The Managing Member may change the location of the principal office of the Company at any time.

**1.6. Definitions**

a) Additional Members. This term shall have the meaning ascribed to it in Paragraph 3.2.

b) Affiliate. With reference to any person, any other person controlling, controlled by or under direct or indirect common control with such person.

c) Agreement. This Operating Agreement of Mansfield Boat and RV Storage L.L.C., is a Texas limited liability company.

d) Assignee. This term shall have the meaning ascribed to it in Article 9.

e) Bankruptcy. A person or entity shall be deemed bankrupt if:

1) any proceeding is commenced against such person or entity as debtor for any relief under bankruptcy or insolvency laws, or laws relating to the relief of debtors, reorganizations, arrangements, compositions or extensions and such proceeding is not dismissed within 90 days after such proceeding has commenced, or

2) such person or entity commences any proceeding for relief under bankruptcy or insolvency laws or laws relating to the relief of debtors, reorganizations, arrangements, compositions or extensions.

f) Book Value. This term shall have the meaning ascribed to it in Paragraph 6.2(a).

g) Capital Account. This term shall have the meaning ascribed to it in Paragraph 6.2(b).

h) Capital Commitment. This term shall have the meaning ascribed to it in Paragraph 5.1.

i) Capital Contribution. This term shall have the meaning ascribed to it in Paragraph 5.1(b).

j) Certificate. The Certificate of Formation of Mansfield Boat and RV Storage L.L.C., a Texas limited liability company.

k) Code. United States of America Internal Revenue Codes, as amended from time to time (and any corresponding provisions of succeeding law).

l) Defaulting Member. This term shall have the meaning ascribed to it in Paragraph 5.4(a).

m) Fiscal Quarter. This term shall have the meaning ascribed to it in Paragraph 6.2(c).

n) Fiscal Year. This term shall have the meaning ascribed to it in Paragraph 6.2(d).

o) Net Income or Net Loss. This term shall have the meaning ascribed to it in Paragraph 6.2(e).

p) Percentage Interest. This term shall have the meaning ascribed to it in Paragraph 9 a d 10.

q) Sale or Exchange. This term shall have the meaning ascribed to it in this agreement.

r) Securities Act. United States Federal Code, as amended from time to time.

s) TMP. This term shall have the meaning ascribed to it in Paragraph 13.16.

t) Termination Date. This term shall have the meaning ascribed to it in Paragraph 2.1.

u) Treasury Regulations. The Income Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

## 2. TERM AND TERMINATION OF THE COMPANY

### 2.1. Term

The term of the Company shall continue indefinitely unless sooner terminated as provided in Paragraph 2.2 or by operation of law or extended as provided in Paragraph 2.3. The last day of the term of the Company, as such may be extended as provided herein, is referred to herein as the "Termination Date."

### 2.2. Termination

The Company shall terminate prior to the end of the period specified in Paragraph 2.1 at the election of the Managing Member. The Managing Member shall deliver notice of such termination to the Non-Managing Members.

### 2.3. Extension of Term

The term of the Company may be extended by the Managing Member. The Managing Member shall provide notice of any such extension to the Non-Managing Members.

## 3. INITIAL MEMBERS; CHANGES IN MEMBERSHIP

### 3.1. Name and Address

The persons listed on Exhibit A are hereby admitted as Members of the Company. Exhibit A shall be amended from time to time to reflect changes in the membership of the Company (including the admission of Additional Members). Any such amended Exhibit A shall supersede all prior Exhibit A's and become part of this Agreement and shall be kept on file at the principal office of the Company.

### 3.2. Admission of Additional Members

Individuals involved in the activities of the Company may be admitted to the Company as additional members ("Additional Members") on such terms and conditions as shall be determined by the Managing Member, in their sole discretion. Each Additional Member shall be admitted only if he shall have executed this Agreement or an appropriate amendment to it in which he agrees to be bound by the terms and provisions of this Agreement as they may be modified by that amendment. Admission of a new Member shall not cause the dissolution of the Company. As reflected on Exhibit A, the Managing Members Percentage Interests shall be equally diluted. Percentage Interest shall not be diluted) to the extent of Percentage Interests granted to any Additional Members. In the event the Additional Members have aggregate Percentage Interests of less than one percent at any time (whether by reason of a determination not to admit Additional Members or the withdrawal or failure to vest of an Additional Member), such shortfall shall revert to and be allocated equally among the Managing Members.

### 3.3. Death, Disability or Withdrawal of a Managing Member

a)  In the case of a Managing Member's death, permanent physical or mental disability or withdrawal from the Company, the Company shall not dissolve or terminate, but its business shall be continued without interruption or without any break in continuity by the remaining Members, with the remaining Substitute Managing Member continuing to serve as the sole Managing Member unless he appoints an additional Managing Member, in his sole discretion. Any deceased, disabled or withdrawn Managing Member (or the holder of his interest) shall become a Non-Managing Member, and the interest of such Managing Member shall become a Non-Managing Member's interest. Such former Managing Member or the holder of such interest shall have no right to participate in the management of the Company and no right to consent to or vote upon any matter, except as provided in Paragraph 13.7.

b)  If such change in the former Managing Member's status shall result in multiple ownership of any Non-Managing Members interest, one or more trustees or nominees may be required to be designated to represent a portion of or the entire Non-Managing Members interest for the purpose of receiving all notices which may be given and all payments which may be made under this Agreement, and for the purpose of exercising all rights which such Non-Managing Member has pursuant to the provisions of this Agreement.

### 3.4. Withdrawal of a Member

a)  Except with the consent of the Managing Member, the interest of a Member may not be withdrawn from the Company in whole or in part except in the event of the death or declaration of legal incompetency of such Member and in such event only if the election to withdraw is given by the personal representative or representatives of such Member in writing to the Managing Member within two months after the date of the appointment of such personal representative or representatives, or within four months from the date of death or declaration of legal incapacity of such Member, whichever is earlier. In the event of such election to withdraw, the interest of such Member shall be withdrawn in its entirety and shall be valued as of the date of withdrawal pursuant to the  provisions of Paragraph 12.2 and paid for in the manner hereinafter provided by this paragraph. The Managing Member shall be entitled, in their sole discretion, to make the distribution in respect of the interest of the withdrawing Member in cash, in kind or pursuant to a promissory note due upon termination of the Company, or in any combination thereof.

b)  In the event of the withdrawal of any Member pursuant hereto, the Percentage Interests and Capital Accounts of the withdrawing Member and the remaining Members shall be

appropriately adjusted, including any adjustments required as a result of any vesting provisions applicable to the withdrawing Members interest.

c)  The withdrawal of a Member shall not be cause for dissolution of the Company.

## 4.  MANAGEMENT, DUTIES AND RESTRICTIONS

### 4.1. Management

The Managing Member shall have the sole and exclusive control of the management and conduct of the Company. Any action shall, unless otherwise specified by the Members, require approval of all Members (or the sole remaining Substitute Managing Member). The right, power and authority of the Managing Member to execute any document on behalf of the Company and to do any and all acts on behalf of the Company shall, subject to any specific limitations set forth in this Agreement and, include without limitation the following:

a)  The company from time to time may elect to appoint executive officers such as a COO, CEO (who would be subordinate to the Managing member), and a CFO. Such appointment must be ratified by all the members of the L.L.C.

b)  To incur indebtedness on behalf of the Company.

c)  To guarantee indebtedness on behalf of the Company.

d)  To loan money to any of the Members upon such terms and conditions as the Managing Member may prescribe.

e)  Generally, to perform all acts deemed by the Managing Member appropriate or incidental to the foregoing and to carry out the purposes and business of the Company.

### 4.2. Conversion of Status as Managing Member

Any Managing Member who has become a Non-Managing Member shall not participate in the control, management and direction of the business of the Company.

### 4.3. Liability of Members to the Company and the Other Members

No Member shall be liable to any other Member for honest mistakes in judgment or for action or inaction taken in good faith for a purpose that was reasonably believed to be in the best interests of the Company, or for losses due to such mistakes, action or inaction, or for the negligence, dishonesty or bad faith of any employee, broker or other agent of the Company; provided that such employee, broker or agent was selected, engaged or retained with reasonable care. Each Managing Member and, with the consent of the Members, a Non-Managing Member, may consult with counsel and accountants on matters relating to Company operations and financial affairs and shall be fully protected and justified in acting in accordance with the advice of counsel or accountants, provided that such counsel or accountants shall have been selected with reasonable care. Notwithstanding any of the for going to the contrary, the provisions of this Paragraph 4.3 shall not be construed so as to relieve (or attempt to relieve) any person of any liability incurred (i) as a result of recklessness or intentional wrongdoing, or (ii) to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, provided that this Paragraph 4.3 shall be construed so as  to effectuate the provisions hereof to the fullest extent permitted by law.

**4.4. Restrictions on the Members**

a) Except with the consent of the Managing Member or as otherwise specifically permitted by this Agreement, no Member shall mortgage, encumber, pledge or otherwise dispose of his or her interest in the Company or in the Company assets or property or enter into any agreement as a result of which any other person shall have rights as a Member of the Company.

b) No Member shall do any act in contravention of this agreement.

**4.5. Additional Restrictions on Non-Managing Members**

a) The Non-Managing Members shall take no part in the control or management of the operations of the Company nor shall Non-Managing Members have any power or authority to act for or on behalf of the Company as a result of this Agreement except as expressly authorized from time to time by the Members.

b) Except as otherwise required by law or as expressly provided herein, the Non-Managing Members shall have no rights to vote, call meetings of the Members or otherwise exercise any similar rights or powers.

**4.6. Officers**

The Managing Members may appoint such officers of the Company as they shall deem advisable and shall have the discretion to remove any officers at any time.

## 5. CAPITAL CONTRIBUTIONS

**5.1. Capital Commitments and Membership Interests of the Members**

Set forth opposite the name of each Member listed on Exhibit A attached hereto is such Members Capital Commitment to the Company and its percentage membership interest in the Company (Percentage Interest). Each Members Capital Commitment represents the aggregate amount of capital that such Member has agreed to contribute to the Company in accordance with the terms hereof in order to fund the Company. Exhibit A shall be amended from time to time to reflect any changes to the Capital Commitments and Percentage Interests of the Members.

a) The Managing Member shall provide at least 30 business day's prior written notice of any required contribution to the capital of the Company, specifying the amount thereof. The Members shall make their contributions to the Company capital in cash, except as otherwise determined by the Managing Member (who may allow contributions in the form of promissory notes). No Member shall be required to contribute any amount in excess of such Members Capital Commitment (as such Capital Commitment may be increased pursuant to subparagraph (a)) without such Members written consent. Any capital contributions hereunder with respect to the Capital Commitments of the Members (each a Capital Contribution) shall be made in such amount as shall be specified by the Managing Members and any such contributions required hereunder shall be in proportion to the Members respective Capital Commitments.

b) In addition to the Capital Commitments set forth on Exhibit A, members shall make Capital Contributions (up to a maximum of $ 50,000.00 to fund any excess of the Company operating expenses in excess of the Management Fee. Founding members Percentage Interest shall not be increased as a result of such Capital Contributions.

**5.2. Liability of the Members**

a) Except as expressly set forth herein, or as otherwise required by law, no Member shall be liable for any debts or obligations of the Company.

**5.3. Liability of Transferees**

For purposes of this Agreement, any transferee of an interest in the Company, whether or not admitted as a substitute Member or treated as a transferee or successor in interest who has not been admitted as a substitute Member (an Assignee) hereunder, shall be treated as having contributed the amounts contributed to the Company by the transferor, as having received distributions made to the transferor, and as having been allocated any Net Income or Net Loss allocated to the transferor of the interest in the Company held by the transferee. In addition, the transferee shall be liable for the transferor's liability for future contributions to the Company. Notwithstanding the above, the transfer of an interest shall not relieve the transferor from any liability hereunder except to the extent that the transferee has actually made all contributions or payments required of the transferor.

**5.4. Defaulting Members**

a) If a Non-Managing Member fails to pay any amount which it is required to pay to the Company on or before the date when such amount is due and payable, such Non-Managing Member shall be deemed to be in default hereunder (a Defaulting Member), and written notice of default shall be given to such Non-Managing Member by the Managing Member. The Company shall be entitled to enforce the obligations of each Non-Managing Member to make the contributions to capital specified in this Agreement, and the Company shall have all remedies available at law or in equity in the event any such contribution is not so made. In the event of any legal proceedings relating to a default by a Defaulting Member, such Defaulting Member shall pay all costs and expenses incurred by the Company, including attorney's fees, if the Company shall prevail. Further, such Defaulting Member shall be obligated to pay the Company interest with respect to the amount of any capital contribution not made when required by this Agreement, with such interest commencing on the date such contribution is initially due and ending on the date such contribution is made to the Company. Such interest shall be calculated on the basis of the then current reference prime rate announced by the Wall Street Journal, or by any other US commercial bank with capital in excess of one hundred million dollars selected by the Managing Member, plus one percent per annum.

b) In addition to the remedies provided under Paragraph 5.4(a), if the Defaulting Member does not remedy a default in the payment of a required contribution within 90 business days of the receipt of the notice specified in Paragraph 5.4(a): (i) the Defaulting Member shall no longer have the right (if any) to vote on any Company matter, and (ii) if the Managing Member so elects, the other Members shall have the option to pay the remaining capital contributions of the Defaulting Member in accordance with any procedures and in such proportions as may be established by the Managing Member. In such event, such Defaulting Member shall be deemed to have withdrawn from the Company and to have forfeited its interest in the Net Income and Net Losses of the Company. Such Defaulting Member shall be entitled to receive only the amount of its Capital Account at the time of the default, with such amount payable, without interest, to the Defaulting Member upon the dissolution of the Company.

**6. CAPITAL ACCOUNTS AND ALLOCATIONS**

**6.1. Capital Accounts**

A Capital Account shall be maintained on the Company books for each Member. In the event any interest in the Company is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

**6.2. Definitions**

Unless the context requires otherwise, the following terms have the meanings specified below for purposes of this Agreement:

a) Book Value. The Book Value with respect to any asset shall be the assets adjusted basis for federal income tax purposes, except as follows:

1) The initial Book Value of any asset contributed by a Member to the Company shall be the fair market value of such asset at the time of contribution, as determined by the contributing Member and the Company.

2) In the discretion of the Managing Member, the Book Values of all Company assets may be adjusted to equal their respective fair market values, as determined by the Managing Member, and the amount of such adjustment shall be treated as Net Income or Net Loss and allocated to the Capital Accounts of the Members, as of the following times: (A) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis capital contribution; and (B) the distribution by the Company to a Member of more than a de minimis amount of Company assets in connection with an adjustment of such Members interest in the Company.

3) The Book Values of all Company assets shall be adjusted to equal their respective fair market values, as determined by the Managing Member, and the amount of such adjustment shall be treated as Net Income or Net Loss and allocated to the Capital Accounts of the Members, as of the following times: (A) the date the Company is liquidated within the meaning of US Treasury Act and Codes; and (B) the termination of the Company pursuant to the provisions of this Agreement.

4) The Book Values of the Company assets shall be increased or decreased to the extent required under US FASB Codes in the event that the adjusted tax basis of the Company assets is adjusted.

5) The Book Value of a Company asset shall be adjusted by the depreciation, amortization or other cost recovery deductions, if any, taken into account by the Company with respect to such asset in computing Net Income or Net Loss.

b) Capital Account. An account maintained by the Company with respect to each Member in accordance with the following provisions:

The Capital Account of each Member shall be increased by:

1) the amount of money and the fair market value of any property contributed to the Company by such Member,

    2) such Members share of Net Income (or items thereof) allocated to his Capital Account pursuant to this Agreement, and

    3) any other amounts required by US FASB regulations, provided the Managing Member determines that such increase is consistent with the economic arrangement among the Members as expressed in this Agreement.

and shall be decreased by:

A) the amount of money and the fair market value of any property distributed by the Company (determined pursuant to Paragraph 12.2 hereof as of the date of distribution) to such Member pursuant to the provisions of this Agreement (net of any liabilities secured by such property that such Member is considered to assume or hold subject to for purposes of US FASB regulations and IRS codes.,

B) such Members share of or Net Loss (or items thereof) allocated to his Capital Account pursuant to this Agreement, and

C) any other amounts required by US FASB regulations, provided the Managing Member determines that such decrease is consistent with the economic arrangement among the Members as expressed in this Agreement.

    c) Fiscal Quarter. The Fiscal Quarters of the Company shall begin on January 01, April 01, July 01, and October 01, and end on December 31, respectively, except that the Company Fiscal Quarter shall begin on the date of this Agreement and end on the next regular quarter end.

    d) Fiscal Year. The Company first Fiscal Year shall begin on the date of this Agreement and end on December 31, 2015. Thereafter, the Company Fiscal Year shall commence on January 01 of each year and end on December 31 of such year or, if earlier, the date the Company terminated during such year. The Managing Member may at any time elect a different Fiscal Year if permitted by the Code and the applicable Treasury Regulations.

    e) Net Income and Net Loss. The net book income or loss of the Company for any relevant period, as computed in accordance with federal income tax principles and as adjusted pursuant to the following provisions, under the method of accounting elected by the Company for federal income tax purposes. The Net Income or Loss of the Company shall be computed, inter alia, by:

       1) including as income or deductions, as appropriate, any tax-exempt income and related expenses that are neither properly included in the computation of taxable income nor capitalized for federal income tax purposes;

       2) including as a deduction when paid or incurred (depending on the Company method of accounting) any amounts utilized to organize the Company or to promote the sale of (or to sell) an interest in the Company, except that amounts for which an election is properly made by the Company under proper US FASB regulations, shall be accounted for as provided therein;

       3) including as a deduction any losses incurred by the Company in connection with the sale or exchange of property notwithstanding that such losses may be disallowed to the Company for federal income tax purposes; and

4) calculating the gain or loss on disposition of Company assets and the depreciation, amortization or other cost recovery deductions, if any, with respect to the Company assets by reference to their Book Value rather than their adjusted tax basis.

f) Percentage Interest. The Percentage Interest for each Member shall generally be as set forth on Exhibit A, as it may be amended from time to time. The sum of the Members Percentage Interests shall be 100 percent.

g) Sale or Exchange. A sale, exchange, liquidation or similar transaction, event or condition with respect to any assets (except realizations of purchase discounts on commercial paper, certificates of deposit or other money-market instruments) of the Company of the type that would cause any realized gain or loss to be recognized for income tax purposes under the Code.

**6.3. Allocation of Net Income or Loss**

a) All Net Income or Loss attributable to the Company shall be allocated among the Members in proportion to their Percentage Interests.

## 7. EXPENSES

The Company will pay all costs and expenses incurred in connection with its activities. The Members shall be entitled to reimbursement by the Company for expenses incurred by them relating to the Company business, as determined by the Managing Members in their discretion.

## 8. DISTRIBUTIONS

**8.1. Interest**

No interest shall be paid to any Member on account of his interest in the capital of, or on account of his investment in, the Company.

**8.2. Mandatory Distributions**

the Managing Member shall distribute any tax distributions to the Members in proportion to their interests in the taxable income of the Company for the period to which such distributions relate.

**8.3. Discretionary Distributions**

The Managing Member may in their discretion make additional distributions of cash or Securities among the Members (not including any Defaulting Members).

a) The distribution pursuant to this Paragraph 8.3 shall be made among the Members as follows (with the source of a particular distribution being in the discretion of the Managing Member):

1) To indemnitor's or other Members allocated Net Income pursuant to Paragraph 6.3(c), to the extent of and in proportion to their respective shares of the cumulative amount of such undistributed Net Income allocated to them, to the extent attributable to any excess of the Management Fee received over the Company operating expenses (taking into account as current or projected expenses any payments of compensation to the Managing Member for their

management of the Company if they are no longer employed by Mansfield Boat and RV Storage L.L.C..

2) Among the Members in proportion to their respective shares of the cumulative amount of undistributed Net Income attributable to the Company operations to the extent made from such undistributed Net Income.

3) Among the Members in proportion to their respective shares of the cumulative amount of undistributed Net Income attributable to the Company investment in the Fund to the extent made from such undistributed Net Income.

4) Among the Members in proportion to their Capital Contributions to the extent constituting a return of capital.

## 9. ASSIGNMENT OR TRANSFER OF MEMBERS INTERESTS

### 9.1. Restrictions on Transfer of Members Interests

No Member may sell, assign, pledge, mortgage or otherwise dispose of all or any portion of his interest in the Company without the consent of the Managing Members.

### 9.2. Opinion of Counsel

Notwithstanding any other provision of this Agreement, no transfer or other disposition of an interest in the Company shall be permitted until the Managing Members shall have received, or waived receipt of, an opinion of counsel reasonably satisfactory to them that the effect of such transfer or disposition would not:

a) result in a violation of the Securities Act;

b) require the Company to register as an investment company under the [YOUR COUNTRY] Investment Company [ACT/LAW/CODE], as amended;

c) require the Company or the Fund to register as an investment adviser under the US Investment Advisers Codes, as amended;

d) result in a termination of the Company for tax purposes, if such termination would have a material adverse effect on the Members;

e) result in a violation of any law, rule or regulation by the Members or the Company;

f) cause the Company to be characterized as a publicly traded partnership or materially increase the risk that the Company will be so characterized.

Such legal opinion shall be provided to the Managing Member by the Company counsel. All costs associated with such opinion shall be borne by the transferring Member.

### 9.3. Violation of Restrictions

In the event of any purported transfer or other disposition of any Members interest in the Company in violation of the provisions of this Article IX, without limiting any other rights of the Company, the Managing Member shall have the option, in their sole discretion, to treat the Member as having withdrawn from the Company and to purchase or cause the Company to purchase such Members interest for cash at a price equal to the value thereof determined by the Managing Member as of a date selected by them. In the event of purchase, the terminated Members and the remaining

Members interests in the Company shall be appropriately adjusted, and the subject Member (and his purported transferee) shall have no further interest in the Company except to receive the purchase price, if any, for his interest as determined by the Managing Member. Such option must be exercised, if at all, by written notice to the affected Member (or his successor(s) in interest) given not later than 30 days after the Managing Member is advised in writing of the purported transfer or disposition, and the purchase or withdrawal shall be consummated on the date specified in such notice, which shall not be later than 90 days after it is given.

### 9.4. Agreement Not to Transfer

Each of the Members agrees with all other Members that he, she or it will not make any disposition of his, her or its interest in the Company, except as permitted by the provisions of this Article IX.

### 9.5. Multiple Ownership

In the event of any disposition which shall result in  multiple ownership of any Members interest in the Company, the Managing Member may require one or more trustees or nominees to be designated to represent a portion of or the entire interest transferred for the purpose of receiving all notices which may be given and all payments which may be made under this Agreement and for the purpose of exercising all rights which the transferor as a Member had pursuant to the provisions of this Agreement.

### 9.6. Substitute Members

No transferee of a Members interest may be admitted to the Company as a substitute Member without the consent of all the Members, which consent shall be subject to the sole discretion of the Members and shall not be subject to challenge by any transferor or transferee.

## 10. VESTING OF PERCENTAGE INTERESTS

### 10.1. Vesting of Managing Member and Non-Managing Members Interests

The Managing Member and all non-managing members interests in the Company shall be 100 percent vested as of the date hereof.

### 10.2. Vesting of Other Non-Managing Members and Additional Members Interests

The interest in the Company of any Non-Managing Member and of any Additional Member shall vest in accordance with a vesting schedule (if any) established by the Managing Member for such other Non-Managing Member or Additional Member. Any amounts allocated Non-Managing Members or Additional Members that, for any reason, do not vest shall revert to the Members whose interest in such amounts were diluted by the original allocation of such amounts to such Non-Managing Member or Additional Member.

## 11. DISSOLUTION AND LIQUIDATION OF THE COMPANY

### 11.1. Liquidation Procedures

Upon termination of the Company in accordance with Article II:

    a) The operations of the Company shall be wound up and the Company shall be dissolved. The Managing Member shall serve as the liquidator.

b) Distributions in dissolution may be made in cash or in kind or partly in cash and partly in kind.

c) The Managing Member shall use their best judgment as to the most advantageous time for the Company to sell investments or to make distributions in kind provided that any such sales shall be made as promptly as is consistent with obtaining the fair value thereof.

d) The proceeds of dissolution shall be applied to payment of liabilities of the Company and distributed to the Members in the following order:

1) to the creditors of the Company in the order of priority established by law;

2) to the Members, in respect of the positive balances in their Capital Accounts, after all Net Income or Net Loss arising upon the liquidation has been allocated among the Members.

## 12. FINANCIAL ACCOUNTING AND REPORTS

### 12.1. Tax Accounting and Reports

The Managing Member shall cause the Company tax returns and employment tax returns, to be prepared and delivered in a timely manner to the Non-Managing Members (but in no event later than 120 days after the close of each of the Company Fiscal Years).

### 12.2. Valuation of Securities and Other Assets Owned by the Company

a) This section is not applicable.

### 12.3. Supervision; Inspection of Books

Proper and complete books of account of the entire financial scope of the Company shall be kept under the supervision of the Managing Member at the principal office of the Company. Such books shall be open to inspection by a Non-Managing Member, at any reasonable time, upon reasonable notice, during normal business hours.

### 12.4. Confidentiality

All information provided to Non-Managing Members under this Article XII shall be used by Non-Managing Members in furtherance of their interests as Non-Managing Members and, subject to disclosures required by applicable law, each Non-Managing Member hereby agrees to maintain the confidentiality of such financial statements and other information provided to Non-Managing Members hereunder.

## 13. OTHER PROVISIONS

### 13.1. Execution and Filing of Documents

The Managing Member shall execute and file a Certificate conforming to the requirements of the various United States Laws and Codes in the office of the Secretary of State for Texas and shall execute a fictitious business name statement and file or cause such statement to be filed if required by Texas law.

**13.2. Other Instruments and Acts**

The Members agree to execute any other instruments or perform any other acts that are or may be necessary to effectuate and inure on the Company.

**13.3. Binding Agreement**

This Agreement shall be binding upon the transferees, successors, assigns and legal representatives of the Members.

**13.4. Governing Law**

This Agreement shall be governed by and construed under the laws of the State of Texas as applied to agreements among Texas residents made and to be performed entirely within Texas.

**13.5. Notices**

Any notice or other communication that a Member desires to give to another Member shall be in writing and shall be deemed effectively given upon personal delivery or upon deposit in any mail box, by registered or certified mail, postage prepaid, or upon transmission by telegram or telecopy, addressed to the other Member at the address shown in the exhibits attached to this Agreement or at such other address as a Member may designate by 30 days advance written notice to the other Members.

**13.6. Power of Attorney**

By signing this Agreement, each Non-Managing Member designates and appoints the Managing Member as its true and lawful attorney, in its name, place and stead to make, execute, sign and file such instruments, documents or certificates that may from time to time be required of the Company by the laws of the United States, the laws of the State of Texas or any other state in which the Company shall conduct its activities in order to qualify or otherwise enable the Company to conduct its operations in such jurisdictions; provided, however, that in no event shall the Managing Member be deemed to have the authority under this Paragraph 13.6 to take any action that would result in any Non-Managing Member losing the limitation on liability afforded hereunder.

**13.7. Amendment Procedure**

This Agreement (and any exhibits to this Agreement) may be amended only with the written consent of all the members. No amendment shall, however, (i) enlarge the obligations of any Member under this Agreement without the written consent of such Member, (ii) dilute the relative interest of any Member in the Net Income, Net Loss, distributions or capital of the Company without the written consent of such Member (except such dilution as may result from additional capital contributions from the Members or the admission of Additional Members as specifically permitted pursuant to this Agreement or as a result of a termination or withdrawal of a Non-Managing Member), or (iii) alter or waive the terms of this Paragraph 13.7 or Paragraphs 13.14 and 13.17. The Managing Member shall promptly furnish copies of any amendments to this Agreement and the Company Certificate to all Members.

**13.8. Effective Date**

This Agreement shall be effective on the date set forth in the first paragraph of this Agreement.

**13.9. Entire Agreement**

This Agreement constitutes the entire agreement of the Members and supersedes all prior agreements between the Members with respect to the Company.

**13.10. Titles; Subtitles**

The titles and subtitles used in this Agreement are used for convenience only and shall not be considered in the interpretation of this Agreement.

**13.11. Company Name**

The Company shall have the exclusive ownership and right to use the Company name (and any name under which the Company shall elect to conduct its operations as long as the Company continues.

**13.12. Exculpation**

Neither the Managing Member nor their Affiliates shall be liable to a Non-Managing Member or the Company for honest mistakes of judgment, for action or inaction taken reasonably and in good faith for a purpose that was reasonably believed to be in the best interests of the Company, for losses due to such mistakes, action or inaction, or to the negligence, dishonesty or bad faith of any employee, broker or other agent of the Company, the Managing Member or their Affiliates provided that such employee, broker or agent was selected, engaged or retained and supervised with reasonable care, provided that this Paragraph 13.12 shall not extend to any action which constitutes fraud, willful misconduct or gross negligence. The Managing Member may consult with counsel and accountants in respect of Company financial statements and all operations and be fully protected and justified in any action or inaction that is taken in accordance with the advice or opinion of such counsel or accountants, provided that they shall have been selected with reasonable care. Notwithstanding any of the foregoing to the contrary, the provisions of this Paragraph 13.12 and of Paragraph 13.13 hereof shall not be construed so as to relieve (or attempt to relieve) any person of any liability by reason of recklessness or intention al wrongdoing or to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Paragraph 13.12 and of Paragraph 13.13 to the fullest extent permitted by law.

**13.13. Indemnification**

The Company agrees to indemnify, out of the assets of the Company only, the Managing Member and their Affiliates (and their agents), to the fullest extent permitted by law and to save and hold them harmless from and in respect of all (a) reasonable fees, costs, and expenses paid in connection with or resulting from any claim, action or demand against the Managing Member, their Affiliates or any agent thereof, the Company or their agents that arise out of or in any way relate to the Company, its properties, business or finances and (b) such claims, actions and demands and any losses or damages resulting from such claims, actions and demands, including amounts paid in settlement or compromise of any such claim, action or demand; provided, however, that this indemnity shall not extend to conduct not undertaken in good faith nor to any fraud, willful misconduct or gross negligence. Any person receiving an advance with respect to expenses shall be required to agree to return such advance to the Company in the event it is subsequently determined that such person was not entitled to indemnification hereunder. Any indemnified party shall promptly seek recovery under any other indemnity or any insurance policies by which such indemnified party may be indemnified or covered or from any portfolio company in which the Company has an investment, as the case may be. No payment or advance may be made to any person under this Paragraph13.13 to any person who may have a right to any other indemnity (by insurance or otherwise) unless such person shall have agreed, to the extent of any other recovery, to return such payments or advances to the Company. It is expressly understood that this section is expressly

subordinate to and completely subject to any and all present and future documentation as required by Key Bank national Association.

**13.14. Limitation of Liability of Members**

Except as otherwise expressly provided herein or as required by Texas law, no Member shall be bound by, nor be personally liable for, the expenses, liabilities or obligations of the Company in excess of the balance of such Members Capital Commitment to the Company.

**13.15. Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Tarrant County Texas, in accordance with the rules, then obtaining, of the American Arbitration Association. Any award shall be final, binding and conclusive upon the parties. A judgment upon the award rendered may be entered in any court having jurisdiction thereof.

**13.16. Tax Matters Partner**

Beeman Ainsworth, Managing member shall be the Company US Tax Matters Partner under the Code (TMP). The TMP shall have the right to resign by giving 30 days written notice to the Members. Upon the resignation, dissolution or Bankruptcy of the TMP, a successor TMP shall be elected by a majority in interest of the other Members. The TMP shall employ experienced tax counsel to represent the Company in connection with any audit or investigation of the Company by any taxing authority and in connection with all subsequent administrative and judicial proceedings arising out of such audit. The fees and expenses of such, and all expenses incurred by the TMP in serving as the TMP, shall be Company expenses and shall be paid by the Company. Notwithstanding the foregoing, it shall be the responsibility of the Members, at their expense, to employ tax counsel to represent their respective separate interests. If the TMP is required by law or regulation to incur fees and expenses in connection with tax matters not affecting each of the Members, then the TMP may, in his sole discretion, seek reimbursement from or charge such fees and expenses to the Members on whose behalf such fees and expenses were incurred. The TMP shall keep the Members informed of all administrative and judicial proceedings, as required by law or regulation, and shall furnish a copy of each notice or other communication received by the TMP from the taxing authority to each Member, except such notices or communications as are sent directly to such Member by any government authority. The relationship of the TMP to the Members is that of a fiduciary, and the TMP has a fiduciary obligation to perform his duties as TMP in such manner as will serve the best interests of the Company and all of the Company Members. To the fullest extent permitted by law, the Company agrees to indemnify the TMP and his agents and save and hold them harmless from and in respect to all (i) reasonable fees, costs and expenses in connection with or resulting from any claim, action or demand against the TMP, the Managing Member or the Company that arise out of or in any way relate to the TMPs status as TMP for the Company, and (ii) all such claims, actions and demands and any losses or damages there from, including amounts paid in settlement or compromise of any such claim, action or demand; provided that this indemnity shall not extend to conduct by the TMP adjudged (i) not to have been undertaken in good faith to promote the best interests of the Company or (ii) to have constituted recklessness or intentional wrongdoing by the TMP.

**13.17. Taxation as Company**

The Managing Member, while serving as such, agree to use their best efforts to avoid taking any action that would cause the Company to be classified as other than a partnership for federal income tax purposes.

## 14. MISCELLANEOUS TAX COMPLIANCE PROVISIONS

### 14.1. Substantial Economic Effect

The provisions of this Agreement are intended to comply generally with the provisions of US Treasury Regulations or codes, and shall be interpreted and applied in a manner consistent with such Regulations; and, to the extent the subject matter thereof is otherwise not addressed by this Agreement, the provisions of United States Codes or State Law are hereby incorporated by reference unless the Managing Member shall determine that such incorporation will result in economic consequences inconsistent with the economic arrangement among the Members as expressed in this Agreement. In the event the Managing Member shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed or allocated or the manner in which distributions and contributions upon liquidation (or otherwise) of the Company (or any Members interest therein) are effected in order to comply with such Regulations and other applicable tax laws, or to assure that the Company is treated as a partnership for tax purposes, or to achieve the economic arrangement of the Members as expressed in this Agreement, then, notwithstanding anything in this Agreement to the contrary, the Managing Member may make such modification, provided that it is not likely to have a material detrimental effect on the tax consequences and total amounts distributable to any Non-Managing Member pursuant to Articles VIII and XI as applied without giving effect to such modification. The Managing Member shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Members and the amount of Company capital reflected on the Company balance sheet, as computed for book purposes pursuant to this Agreement, in accordance with any regulations, and (ii) make any appropriate modifications in the event unanticipated events (such as the incurrence of nonrecourse indebtedness) might otherwise cause the allocations under this Agreement not to comply with US regulations, provided in each case that the Managing Member determine that such adjustments or modifications shall not result in economic consequences inconsistent with the economic arrangement among the Members as expressed in this Agreement.

### 14.2. Income Tax Allocations

a) Except as otherwise provided in this paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated there under, income, gain, loss, deduction, or credit of the Company for income tax purposes shall be allocated in the same manner the corresponding book items are allocated pursuant to this Agreement.

b) In accordance with US FASB regulations and US Treasury Regulations there under, income, gain, loss and deduction with respect to any asset contributed to the capital of the Company shall, solely for tax purposes, be allocated between the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its initial Book Value.

c) In the event the Book Value of any Company asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as in US FASB regulations and the US Treasury Regulations there under.

### 14.3. Withholding

The Company shall at all times be entitled to make payments with respect to any Member in amounts required to discharge any obligation of the Company to withhold or make payments to any governmental authority with respect to any federal, state, local or other jurisdictional tax liability of such Member arising as a result of such Members interest in the Company. Any such withholding payment shall be charged to the Members Capital Account.

**IN WITNESS WHEREOF, the Members have executed this Agreement as of the date 02th day of November, 2018 above written.**

**MANAGING MEMBER AND TRUSTEE**

**Authorized Signature**
The Poyner Wilkins Generational. Trust

Exhibit E

05-167
(Rev.9-15/6)

# Texas Franchise Tax Ownership Information Report

*To be filed by Entities other than Corporations, Limited Liability Companies, Limited Partnerships, Professional Associations or Financial Institutions*

Tcode 13197

| Taxpayer number | Report year |
|---|---|
| 32057383575 | 2017 |

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

| Taxpayer name | | | Blacken circle if the mailing address has changed. |
|---|---|---|---|
| MANSFIELD BOAT AND RV STORAGE LLC | | | ● |
| Mailing address: 305 SMITH STREET | Country: | | Secretary of State (SOS) file number or Comptroller file number |
| City: MANSFIELD | State: TX | ZIP code plus 4: 76063 | 0802222697 |

**SECTION A.** Enter the information required for each general partner of a partnership or each trustee of a trust. Also, provide the information for each person or entity that owns an interest of 10 percent or more in this entity.

| Name | What type of owner? (Blacken only one) | GENERAL PARTNER | LIMITED PARTNER | OTHER |
|---|---|---|---|---|
| THE POYNER WILKINS GENERATIONAL T[runcated] | | ○ | ○ | ● |
| Mailing address: 305 SMITH STREET | FEI number: 82-6685542 | Percentage of ownership: 100 | | |
| City: MANSFIELD | State: TX | ZIP code plus 4: 76063 | | |

| Name | What type of owner? (Blacken only one) | GENERAL PARTNER | LIMITED PARTNER | OTHER |
|---|---|---|---|---|
| BEEMAN AINSWORTH | | ○ | ○ | ● |
| Mailing address: 2521 E. MOUNTAIN VILLAGE PKWY, SUITE 225 | FEI number: | Percentage of ownership: 0 | | |
| City: WASILLA | State: AK | ZIP code plus 4: 99654 | | |

| Name | What type of owner? (Blacken only one) | GENERAL PARTNER | LIMITED PARTNER | OTHER |
|---|---|---|---|---|
| | | ○ | ○ | ○ |
| Mailing address: | FEI number: | Percentage of ownership: | | |
| City: | State: | ZIP code plus 4: | | |

**SECTION B.** Enter the information required for each entity, if any, in which this partnership, association, trust or other entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or entity | State of formation | FEI number | Percentage of ownership |
|---|---|---|---|
| | | | |
| | | | |

| Registered agent and office, or agent for service of process *(see instructions if you need to make changes)* | | | |
|---|---|---|---|
| Agent: CURTIS WALLACE | | | |
| Office: 1527 WEST HWY 114, SUITE 500 | City: GRAPEVINE | State: TX | ZIP code plus 4: 76051 |

The above information is authorized by Section 171.201(a)(2), Section 171.201(a)(3), 171.202(a)(4) and 171.354 for each entity.

**Use additional forms (05-167) for Sections A and B as necessary.**

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below.

| sign here | Title | Date | Area code and phone number |
|---|---|---|---|
| [signature] | TRUSTEE | 11/02/18 | ( 90 ) 75-218420 |

**Mail original to:**
Texas Comptroller of Public Accounts
P.O. Box 149348
Austin, TX 78714-9348

Texas Comptroller Official Use Only

05-167|(Rev.9-15/6)|13197|32057383575|2017|Fri Nov 02 2018 15:25:35 GMT-0900 (GMT-09:00)|9997|1|

VE/DE ○

Exhibit E

05-102 (Rev.9-15/33)

# Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP), Professional Associations (PA) and Financial Institutions*

**Tcode** 13196 Franchise

| Taxpayer number | Report year |
|---|---|
| 32057383575 | 2017 |

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

Taxpayer name: **MANSFIELD BOAT AND RV STORAGE LLC**

● Blacken circle if the mailing address has changed.

Mailing address: **305 SMITH STREET**

City: **MANSFIELD** State: **TX** ZIP code plus 4: **76063**

Secretary of State (SOS) file number or Comptroller file number: **0802222697**

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office: **305 SMITH STREET, MANSFIELD, TEXAS 76063**

Principal place of business: **305 SMITH STREET, MANSFIELD, TEXAS 76063**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

3205738357517

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | Term expiration (mmddyy) | Mailing address | City | State | ZIP Code |
|---|---|---|---|---|---|---|---|
| BEEMAN AINSWORTH | MANAGING MEMBER | ● YES | 123119 | 2521 E. MOUNTAIN VILLAGE PARKWAY | WASILLA | AK | 99686 |
| MARTHA REYNOLDS | DIRECTOR | ● YES | 123119 | 605 RUTGERS DRIVE | LANCASTER | TX | 75134 |
| JANICE REYNOLDS | DIRECTOR | ● YES | 123119 | P.O. BOX 750 | VALDEZ | AK | 99686 |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |
| | | | |

**SECTION C** Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| THE POYNER WILKINS GENERATIONAL TRUST | TX | | 100 |

Registered agent and registered office currently on file *(see instructions if you need to make changes)*

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

Agent: **CURTIS WALLACE**

Office: **1527 WEST HWY 114, SUITE 500** City: **GRAPEVINE** State: **TX** ZIP Code: **76051**

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

sign here [signature] Title: **MANAGING MEMBER** Date: **11/02/18** Area code and phone number: **(907) 521-8420**

Texas Comptroller Official Use Only

05-102|(Rev.9-15/33)|13196|32057383575|2017|Fri Nov 02 2018 15:17:08 GMT-0900 (GMT-09:00)|9997|1|

VE/DE ○ PIR IND ○



Exhibit E

AP-114
(Rev.1-17/17)

# Texas Nexus Questionnaire

*for corporations, limited liability companies, partnerships, associations, trusts, joint ventures, holding companies, joint stock companies and railroad companies*

ACID

**MANSFIELD BOAT AND RV STORAGE LLC**
**305 SMITH STREET**
**MANSFIELD, TX 76063**

Texas taxpayer number: 32057383575

File number: 0802222697

*You have certain rights under Chapters 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at the address or phone number listed on this form.*

1. Entity name: Mansfield Boat and RV Storage LLC
2. Federal employer identification number (FEIN): 47-4112361
3. Mailing address (if different than above address): 305 Smith Street
   City: Mansfield State: TX ZIP code: 76063
4. Contact person: Larry Reynolds
5. Contact phone (Area code and number): 817-994-9255

6. Entity type

- ☐ Profit corporation *(CF)*
- ☐ Professional corporation *(CU)*
- ☐ Nonprofit corporation *(CM)*
- ☑ Limited liability company *(CI)*
- ☐ Limited partnership *(PF)*
- ☐ General partnership *(PB,PI)*
- ☐ Professional association *(AF)*
- ☐ Business association *(AC)*
- ☐ Business trust *(TF)*
- ☐ Real estate investment trust *(TI)*
- ☐ Joint venture *(PW)*
- ☐ Joint stock company *(SF)*
- ☐ Holding company *(HF)*
- ☐ Railroad company *(CX)*
- ☐ Other ______

7. In what state or country was this entity formed? Texas, USA Formation date (month day year): 0 5 2 7 1 5
8. If this entity is registered with the Texas Secretary of State, please provide the file number. 0802222697
9. Please provide the entity's North American Industry Classification System (NAICS) code. 5 3 1 1 3 0
   *(NAICS codes are available at www.census.gov/epcd/www/naics.html.)*

10. Please list any tax permits or licenses issued to this entity by the Texas Comptroller.

| Type of permit or license | Taxpayer number for permit or license |
|---|---|
| sales tax permit C and S Storage | 1 7 5 2 9 3 9 8 2 5 1 |
| Mansfield Boat and Rv Storage | |

If included in a combined group Texas Franchise Tax Report, provide the reporting entity's Texas taxpayer number: 3 2 0 5 7 3 8 3 5 7 5

11. Please describe this entity's business activities: Boat and Rv Self Storage

12. Please check the items pertaining to this entity in Texas during the last seven years.

| Item | Start Date (month day year) |
|---|---|
| ☐ Place of business *(maintaining a place of business, manufacturing plant, office, warehouse or retail outlet, owned or leased)* | |
| ☐ Performance of a contract *(with own employees, local labor or contractors)* | |
| ☐ Delivering *(items sold and delivered into Texas in company vehicles)* | |
| ☐ Warranty work *(with own employees or third party)* | |
| ☑ Real property in Texas *(hold, acquire, lease or dispose of)* | 0 5 2 7 1 5 |
| ☐ Personal property *(hold, acquire, lease, install, erect, modify, maintain, repair or dispose of personal property used or located in Texas)* | |
| ☐ General partner *(in a general or limited partnership that is doing business in Texas)* | |
| ☐ Shows *(staging of or participation in shows, theatrical performances, sporting events or other events in Texas)* | |

*(continued on back)*

Exhibit E

Form AP-114 (Back)(Rev.1-17/17)

12. Please check the items pertaining to this entity in Texas during the last seven years. *(continued)*

| Item | Start Date (month / day / year) |
|---|---|
| ☐ Inventory *(including consigned goods)* | |
| ☐ Loan production activities *(solicit sales/loan contracts, gather data, make credit checks or other financial activities in Texas with own employees, independent contractors or agents)* | |
| ☐ Solicitation *(promote sales/service using employees, independent contractors, agents or other representatives)* | |
| ☐ Employees/independent representatives *(including temporary employees, contractors, agents)* | |
| ☐ Sell and license software in Texas | |
| ☐ Processing, manufacturing, storing goods | |
| ☐ Processing and shipment *(send materials to Texas manufacturer, processor, repairer or printer to be processed, stored in completed form, awaiting orders for shipment)* | |
| ☐ Advertising *(enter Texas to purchase, place or display advertising for the benefit of another)* | |
| ☐ Provide a service *(through employees, independent contractors, agents or other representatives)* | |
| ☐ Federal enclave *(doing business in Texas even if the area is leased, owned or controlled by the federal government)* | |
| ☐ Holding company *(maintain place of business, manage, direct and/or perform services for subsidiaries or related entities)* | |
| ☐ Transportation *(carry passengers or property where the pickup and delivery is in Texas; have Texas facilities, employees or other representatives for storage, delivery, shipping of goods; servicing, maintaining, repairing vehicles or other equipment; coordinating/directing the transportation of passengers or property)* | |
| ☐ Franchisors *(contracts where a franchisee is granted the right to engage in business under a marketing plan/system substantially prescribed by the franchisor or if franchisee's business is substantially associated with the franchisor's brand, service mark or other commercial symbol)* | |

13. Please provide a full description of the entity's activities in Texas. If the entity no longer has nexus in Texas, enter the end date of the entity's activities in Texas and provide the reason why this entity does not have Texas franchise tax responsibility. **Boat and Rv Self Storage**

Nexus end date (month / day / year):

14. Please complete this information for all members, all general partners and each limited partner with a 10% or more interest in the partnership. (For limited partnerships, general partnerships, joint ventures and joint stock companies.) *(Attach additional sheets if necessary.)*

| Name | Type of owner | FEIN | Percentage of ownership |
|---|---|---|---|
| The Poyner Wilkins Generational Tru[st] | ☑ Member ☐ General Partner ☐ Limited Partner | 82-6685542 | 100 % |

| Mailing address | City | State | ZIP code | Begin date in Partnership |
|---|---|---|---|---|
| 305 Smith Street | Mansfield | TX | 99686 | 05/27/15 |

sign here ▸ [signature] | Printed name: Beeman Ainsworth | Title: Managing Member

| Name | Type of owner | FEIN | Percentage of ownership |
|---|---|---|---|
| | ☐ Member ☐ General Partner ☐ Limited Partner | | % |

| Mailing address | City | State | ZIP code | Begin date in Partnership |
|---|---|---|---|---|
| | | | | |

sign here ▸ | Printed name | Title

| Name | Type of owner | FEIN | Percentage of ownership |
|---|---|---|---|
| | ☐ Member ☐ General Partner ☐ Limited Partner | | % |

| Mailing address | City | State | ZIP code | Begin date in Partnership |
|---|---|---|---|---|
| | | | | |

sign here ▸ | Printed name | Title

I declare that the information in this document and any attachment is true and correct to the best of my knowledge and belief.

| Print preparer's name | Title | Phone *(Area code and number)* |
|---|---|---|
| | | |

sign here ▸ | Date

Information about franchise tax is available online at www.comptroller.texas.gov/taxes/franchise/.
For taxpayer assistance, call 1-800-252-1381 or 512-463-4600.

Please return this completed questionnaire to:
Texas Comptroller of Public Accounts
P.O. Box 149348
Austin, TX 78714-9348

# AMMENDED TRUST AGREEMENT

STATE OF TEXAS

COUNTY OF TARRANT

The Poyner Wilkins Generational Trust date July 24, 2015, Martha Reynolds, managing member of Mansfield Boat and RV Storage L.L.C., 605 Rutgers Drive, Lancaster, Texas 751434 (Trustor) transfers and delivers to Beeman Ainsworth (Trustee) 100% of the member shares of Mansfield Boat and RV Storage L.L.C. and any other property that becomes subject to this agreement, the Trust estate of an express Trust to be held, administered and distributed by the Trustees as provided in this agreement.

## Article I
## Trust Agreement

1.01 Name: This Trust shall be known as the Poyner Wilkins Generational Trust dated July 1, 2011.

1.02 Trust Irrevocable: The Trustor and any other parties including current and future beneficiaries shall have the right at any time, either now or in the future to add other property acceptable to the trustees to the trust created by this agreement, any additional property, when received and accepted by the trustees, shall become a part of the Trust estate of this Trust.

## Article II
## Distributions by the Trustees

2.01 Distribution of Income: The Trustees shall, no less often than annually, apply for the benefit of Larry J. Reynolds, Settlor and any other beneficiaries in the amounts determined by the Trustee, or Substitute Trustee, in their absolute discretion, all of the net income of the Trust estate.

2.02 Discretionary payment of Principal: If the Trustee, or Substitute Trustee, deems the net income payable to any income beneficiary to be inadequate to provide for his reasonable care, support and maintenance, the Trustee, or Substitute Trustee may distribute all of any part of the Trust principal that the Trustees, in their discretion, believes to be reasonably necessary for that beneficiary's care, support and maintenance. In exercising discretion, the Trustee shall take into account any other funds that are available to beneficiary to meet those needs from any source other than this Trust.

2.03 Termination of Trust: Trust may be terminated by joint agreement of Trustees and beneficiaries at any time.

2.04 Termination of Trust: The Trust shall terminate upon the 50th birthday of the youngest beneficiary.

2.05 Death of all Beneficiaries: If a beneficiary dies before all Trust assets have been disposed, any remaining Trust estate shall be distributed in fee by right, at representation, the surviving issue of the beneficiary. If the beneficiary leaves no surviving issue then the Trust estate shall be distributed in fee to said beneficiary's heirs at law as determined under the laws of the State of Texas by right of representation. However, in no event may the Trust estate be distributed to the Trustor or their estate.

## Article III
## Power of Trustees

3.01 Confirmation of Statutory Powers: Except as otherwise set forth in this Agreement, Trustor grants to the Trustees all powers expressly granted by the Texas Trust Code as amended or

recodified from time to time, hereafter, and all powers necessary to give effect to this express power.

Article IV

Determination of Income & Principal

4.01 General Authority: Except as otherwise specifically provided below, the Trustees, at their sole discretion, may determine what is Principal or income and how all receipts and disbursement shall be credited, charged or apportioned as between principal or income. The Trustees judgement is binding on everyone beneficially interested in this trust. Trustees may reply on the statement of a paying corporation as to whether its dividends, if any, are paid from profits or earnings or return of capital or distribution of assets and as to any other fact relevant under this Trust concerning the source of character of dividends or distribution of corporate assets.

4.02 Share Dividends: All extraordinary share dividends shall be considered principal, but ordinary share dividends paid regularly by a corporation in lieu of or in addition to regular cash dividends shall be considered income. The Trustee's determination as to whether any share dividend is ordinary or extraordinary and as to whether any share dividend shall be apportioned or set aside in whole or in part to principal or income, shall be final and conclusive on all persons interested in the Trust.

4.03 Appreciation: All realized appreciation, the value or shares, bonds, securities, or other properties resulting from a sale, exchange or disposition, and all unrealized appreciation, shall be deemed to be principal.

4.04 Determination of Net Income: In determining the amount of net income for distribution, the Trustees shall make no deduction from or charge against the income on account of the depreciation

or amortization of any investments made by the Trustees or on account of any losses sustained from the sale, exchange or other disposition of Trust assets.

Article V
Administrative and Operational Provisions

5.01 Taxes and Expenses of Trust: All property taxes, assessments, fees, charges and other expenses incurred by the Trustees in administration of protection of this trust including the compensation of the Trustees shall be charged on the Trust estate and shall be paid by the Trustees before the final distribution of the Trust estate. These sums shall be paid out of the Trust principal, and income in whatever manner and proportions the Trustees in their absolute discretion deems to be advisable.

5.02 Spend Thrift Provisions: No beneficiary of this Trust shall have any right, power or authority to alienate, encumber or hypothecate his or her interest in the principal or income of this Trust in any manner.

5.03 Payments to Minors: Whenever payment is to be made to or for the benefit of a minor, the Trustees may make the payment directly to the minor or as allowance to the guardian of the minor or to any other person having the care and control of the minor other than the Trustor.

5.04 Payments of Incompetents: Whenever payment is to be made to incompetent, the Trustees may make the payment to his or her guardian of the person of the estate. The term "Incompetent" refers to all cases in which a guardian of the person or estate of any person having rights under this agreement has been appointed by a court of competent jurisdiction.

5.05 Appointment of Successor Trustees: The Trustees may resign at any time. On their resignation or death, the trustor may appoint a successor Trustee. If the Trustee fails, refuses, or is unable to appoint a successor Trustee, the Trustee or any beneficiary fo the Trust may secure, at the expense of the Trust, the appointment of successor Trustees through a court of competent jurisdiction. In no event may the Trustor appoint himself a Trustee.

5.06 Rights and Power of Successor Trustees: Any successor Trustee appointed under Paragraph 5.05 above because of the death, resignation or other act of the Trustees shall immediately secede all title of the Trustees to the Trust estate and all powers, rights, discretion, obligation and immunities of the Trustees under this appointment as if the successor Trustees had been originally appointed Trustees.

5.07 Compensation of the Trustees: The Trustees shall receive no compensation under this Trust agreement without prior consent of all beneficiaries, trustor or court order.

## Article VI
## Miscellaneous Provisions

6.01 Applicable Law: The Trust created by this agreement has been accepted by the Trustee in the State of Texas, will be administered by the Trustees in Texas and its validity, construction and all rights under it shall be governed by the laws of the State of Texas in Tarrant County, Texas.

6.02 Severability: Should any provisions of this agreement be or become invalid or unenforceable, the remainder of the provision of this agreement shall continue to be fully effective.

6.03 Notices: Any notices or other communication required or permitted by this agreement to be delivered to or served on the

**Trustees shall be deemed properly delivered to, served on or received by the Trustees when personally delivered to the Trustees. However, in lieu of personal service, notice shall be deemed to be delivered when deposited in the United States mail with postage prepaid, addressed to the Trustee at 305 Smith Street, Mansfield, Texas, 76063**

________________________ 11/2/18

**Beeman Ainsworth (Trustee)** **Date**

________________________ 11/7/18

**Martha A. Reynolds (Trustor)** **Date**

# CERTIFICATE OF ORGANIZATIONAL DOCUMENTS OF THE TRUSTEE OF THE POYNER WILKINS GENERATIONAL TRUST DATED

I, the undersigned, hereby certify that I am the Trustee of the Poyner Wilkins Generational Trust dated ("Trust"), and have knowledge of the matters contained in the Certificate and hereby certify to Premier Bank ( together with its successors and assigns "Lender") that:

1. This Declaration of Trust attached to this Certificate as Exhibit A is a true and correct copy of the current Declaration of Trust, has not been altered, modified or amended, and is in full force and effect.

2. The following person has been duly elected to, and does now hold, the office set forth below, and his signature opposite his typed name is his true and genuine signature:

| Beeman Ainsworth | |
|---|---|
| Printed Name of Trustee | Signature of Trustee |

IN WITNESS WHEREOF, I have hereunto set my hand this 2cd day of November, 2018.

Trustee

Exhibit G

Fill in this information to identify the case.

United States Bankruptcy Court for the:
Northern District of Texas, Dallas Division

Case number (if known): ______________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/16

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

**1. Debtor's name** Mansfield Boat and RV Storage LLC

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as names*

C & S Storage

**3. Debtor's federal Employer Identification Number (EIN)** 47-4112361

**4. Debtor's address**

**Principal place of business**

605 Rutgers
Number Street

Attn. Larry Reynolds

Lancaster, TX 75134
City State ZIP Code

County

**Mailing address, if different from principal place of business**

Number Street

P.O. Box

City State ZIP Code

**Location of principal assets, if different from principal place of business**

1945 FM 157 South
Number Street

Mansfield Boat and RV Storage

Mansfield, TX 76063
City State ZIP Code

**5. Debtor's website (URL)**

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: ______________

Exhibit G

Debtor Mansfield Boat and RV Storage LLC Case number (if known) ____________
Name

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. §101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. §781(3))
- ☑ None of the above

B. *Check all that apply:*

- ☐ Tax-exempt entity (as described in 26 U.S.C. §501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
5 3 1 1

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11. *Check all that apply:*
  - ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☐ A plan is being filed with this petition.
  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No
☐ Yes. District ____________ When ________ Case number ____________
MM / DD / YYYY
District ____________ When ________ Case number ____________
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No
☐ Yes. Debtor ____________ Relationship ____________
District ____________ When ____________
MM / DD / YYYY
Case number, if known ____________

Exhibit G

Debtor Mansfield Boat and RV Storage LLC Case number (if known)
Name

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard?

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the propery?**
Number Street

City State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency
Contact name
Phone

**Statistical and administrative information**

**13. Debtor's estimation of available funds?**

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 ☐ 50-99 ☐ 100-199 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 200-999 | ☐ 5,001-10,000 | ☐ 50,000-100,000 |
| | ☐ 10,001-25,000 | ☐ More than 100,000 |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☑ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

Exhibit G

Debtor Mansfield Boat and RV Storage LLC
Name

Case number *(if known)*

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☑ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11/30/2018
MM/ DD/ YYYY

X [signature]
Signature of authorized representative of debtor

Larry Reynolds
Printed name

Title General Manager

**18. Signature of attorney**

X [signature]
Signature of attorney for debtor

Date ~~11/16/2018~~ 11/30/2018
MM/ DD/ YYYY

Herman A. Lusky
Printed name

Lusky & Associates, P.C.
Firm name

PO Box 795812
Number Street

Dallas
City

TX
State

75379-5812
ZIP Code

(972) 386-3900
Contact phone

mail@lusky.com
Email address

12702000
Bar number

TX
State

Exhibit H

Fill in this information to identify the case:

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/16

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1: Income

**1. Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From 12/01/2018 to Filing date<br>MM/ DD/ YYYY | ☐ Operating a business<br>☐ Other | |
| **For prior year:** | From 12/01/2017 to 11/30/2017<br>MM/ DD/ YYYY MM/ DD/ YYYY | ☑ Operating a business<br>☐ Other | $1,100,000.00 |
| **For the year before that:** | From 12/01/2016 to 11/30/2017<br>MM/ DD/ YYYY MM/ DD/ YYYY | ☐ Operating a business<br>☐ Other | |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From 01/01/2018 to Filing date<br>MM/ DD/ YYYY | | Total Gross Revenue: $0.00 |
| **For prior year:** | From 01/01/2017 to 12/31/2016<br>MM/ DD/ YYYY MM/ DD/ YYYY | | Total Gross Revenue: $0.00 |
| **For the year before that:** | From 01/01/2016 to 12/31/2015<br>MM/ DD/ YYYY MM/ DD/ YYYY | | Total Gross Revenue: $0.00 |

Exhibit H

**Part 2: List Certain Transfers Made Before Filing for Bankruptcy**

3.

**Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|---|
| 3.1. | Pender Capital (Creditor's name)<br>11798 Wilshire Blvd. 460 (Street)<br>Los Angeles, CA 90025 (City, State, ZIP Code) | Monthly | $104,843.00 | ☑ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other |
| 3.2. | Argus Pro Self Storage Management (Creditor's name)<br>3434 E. Kleindale E (Street)<br>Tucson, AZ 85716 (City, State, ZIP Code) | Monthly | $18,000.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other Management Fees |
| 3.3. | MT2 Energy (Creditor's name)<br>Po Box 733560 (Street)<br>Dallas, TX 75373-3560 (City, State, ZIP Code) | Monthly | $14,500.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other |
| 3.4. | Capital Premium Financing, Inc. (Creditor's name)<br>12235 S. 800 E (Street)<br>Draper, UT 84020 (City, State, ZIP Code) | Monthly | $14,500.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other Insurance Premiums |

Exhibit H

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or co-signed by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| | Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | Beeman "Neal" Ainsworth (Creditor's name)<br>2522 E. Mountain Village Dr. B223 (Street)<br>Wasilla, AK 99654 (City State ZIP Code)<br>**Relationship to debtor:** Managing Member / Attorney | Various | $10,000.00 | |
| 4.2. | Larry Reynolds (Creditor's name)<br>305 Smith St. (Street)<br>Mansfield, TX 76063 (City State ZIP Code)<br>**Relationship to debtor:** General Manager, Former Owner | Various | $63,000.00 | |

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1. | Creditor's name<br>Street<br>City State ZIP Code | | | |

**6.**

**Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| | Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|---|
| 5.1. | Creditor's name<br>Street<br>City State ZIP Code | XXXX– | | |

## Part 3: Legal Actions or Assignments

**7.**

**Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity —within 1 year before filing this case.

☐ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | Mansfield Boat & RV Storage, LLC v. Pender Capital Asset Based Lending Fund I, Inc. , et al<br>Case number: 352-304399-18 | Declaratory Judgment, Breach of Contract, tort | 352nd District Court (Name)<br>Street<br>Fort Worth, TX (City State ZIP Code) | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. | Pender Capital Asset Based Lending Fund I, LP v. Mansfield Boat & RV Storage, LLC et al<br>Case number: 048-299273-18 | | 48th District Court of Tarrant County, Texas (Name)<br>Street<br>City State ZIP Code | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

**8.**

**Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

8.1.

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| Custodian's name | Case title | Court name and address |
| Street | Case number | Name |
| City State ZIP Code | Date of order or assignment | Street |
| | | City State ZIP Code |

## Part 4: Certain Gifts and Charitable Contributions

9.

**List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

9.1.

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| Recipient's name | | | |
| Street | | | |
| City State ZIP Code | | | |
| Recipient's relationship to debtor | | | |

## Part 5: Certain Losses

10.

**All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | Date of loss | Value of property lost |
|---|---|---|---|
| 10.1. | | | |

## Part 6: Certain Payments or Transfers

Exhibit H

**11.**

**Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

| 11.1. | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| | Lusky & Associates, PC | Retainer and Initial Court Cost | 12/03/2018 | $15,000.00 |

**Address**

5473 Blair Rd.
Street

Dallas, TX 75231
City State ZIP Code

**Email or website address**

**Who made the payment, if not debtor?**

**12.**

**Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| 12.1. | Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|---|
| | | | | |

**Trustee**

13.

**Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received the transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1. | | | | |

Address

Street

City State ZIP Code

Relationship to debtor

## Part 7: Previous Locations

14.

**Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| | Address | Dates of occupancy |
|---|---|---|
| 14.1. | Street<br>City State ZIP Code | From ______ To ______ |

## Part 8: Health Care Bankruptcies

**15.**

**Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
—diagnosing or treating injury, deformity, or disease, or
—providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.1. | Facility name<br>Street<br>City State ZIP Code | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?**<br>*Check all that apply:*<br>☐ Electronically<br>☐ Paper |

## Part 9: Personally Identifiable Information

**16.**

**Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. ____

Does the debtor have a privacy policy about that information?

☐ No

☐ Yes

17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b) or other pension or profit-sharing plan made available by the debtor as an employee benefit?

☑ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| | EIN: __ __–__ __ __ __ __ __ __ |

Has the plan been terminated?

☐ No

☐ Yes

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1 | Name<br>Street<br><br>City State ZIP Code | XXXX– __ __ __ __ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other ______ | | |

**19.**

**Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| 19.1 Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| Name<br>Street<br>City State ZIP Code | Address | | ☐ No<br>☐ Yes |

**20.**

**Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| 20.1 Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| Name<br>Street<br>City State ZIP Code | Address | | ☐ No<br>☐ Yes |

## Part 11: Property the Debtor Holds or Controls That the Debtor Does Not Own

**21.**

**Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| Various customers<br>Name<br><br>Street<br><br>City State ZIP Code | | Debtor rents space for RV and Boat storage and as such, has its customers' property on its premises. The customers and personal property stored changes daily. | $0.00 |

## Part 12: Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred**

22.

**Has the debtor been a party in any judicial or administrative proceeding under any environmental law?**
Include settlements and orders.

☑ No

☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| <br>Case number | Name<br><br>Street<br><br>City State ZIP Code | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

Debtor Mansfield Boat and RV Storage LLC Case number (if known) 18-33926-HDH-11
Name

23.

**Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Name | Name | | |
| Street | Street | | |
| City State ZIP Code | City State ZIP Code | | |

24.

**Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Name | Name | | |
| Street | Street | | |
| City State ZIP Code | City State ZIP Code | | |

## Part 13: Details About the Debtor's Business or Connections to Any Business

25.

**Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1. Name:<br>Street:<br>City State ZIP Code | | EIN: __ - _______<br>**Dates business existed**<br>From ____ To ____ |

**26.**

**Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☑ None

| | Name and address | Dates of service |
|---|---|---|
| 26a.1. | Name:<br>Street:<br>City State ZIP Code | From ____ To ____ |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| | Name and address | Dates of service |
|---|---|---|
| 26b.1. | Argus Professional Storage Management, LLC<br>Name<br>2993 S. Peoria St., Ste. 105<br>Street<br>Aurora, CO 80014<br>City State ZIP Code | From May 2018 To Present |
| 26b.2. | Move It Management<br>Name<br>12655 N. Central Expressway 925<br>Street<br>Dallas, TX 75243<br>City State ZIP Code | From April 2013 To April 2018 |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

Exhibit H

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. Argus Professional Storage Management, LLC | |
| Name | |
| Street | |
| City State ZIP Code | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

**Name and address**

26d.1. Pender Capital
Name
11798 Wilshire Blvd. #460
Street

Los Angeles, CA 90025
City State ZIP Code

**Name and address**

26d.2. Regions Bank
Name
10 S. Wacker Dr. 2575
Street

Chicago, IL 60606
City State ZIP Code

**27.**

**Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | |

**Name and address of the person who has possession of inventory records**

27.1. ______________________________
Name
______________________________
Street
______________________________
______________________________
City State ZIP Code

**28.**

**List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Reynolds, Larry | 305 Smith St. Mansfield, TX 76063 | General Manager, | 0.00% |

**29.**

**Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| B. Neal Ainsworth | 655 N. Seward Meridian Pkwy Wasilla, AK 99654 | Managing Member, | From ______ To ______ |

**30.**

**Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

Exhibit H

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1. Reynolds, Larry (Name)<br>305 Smith St. (Street)<br><br>Mansfield, TX 76063 (City, State, ZIP Code) | $63,000.00 | Various | |

**Relationship to debtor**

General Manager and former owner

**31.** **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| | EIN: __ __ – __ __ __ __ __ __ __ |

**32.** **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: __ __ – __ __ __ __ __ __ __ |

**Part 14: Signature and Declaration**

Exhibit H

**WARNING** – Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/18/2018 3:44:53 PM
MM/ DD/ YYYY

X ______________________________
Signature of individual signing on behalf of the debtor

Position or relationship to debtor
General Manager

Printed name Larry Reynolds

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☑ No
☐ Yes

Exhibit I

Fill in this information to identify the case:

Debtor name Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

12/15

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

**For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.**

## Part 1: Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2. **Cash on hand** | $600.00 |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1 Wells Fargo Bank, NA | Checking account | 4708 | $52,310.00 |

4. **Other cash equivalents** *(Identify all)*

Name of institution (bank or brokerage firm)

**None**

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. **$52,910.00**

## Part 2: Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

Current value of debtor's interest

Exhibit I

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

**None**

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

**None**

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81. ______

**Part 3: Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
☑ Yes. Fill in the information below.

**Current value of debtor's interest**

11. **Accounts Receivable**

| | face amount | | doubtful or uncollectible accounts | | Current value of debtor's interest |
|---|---|---|---|---|---|
| 11a. 90 days old or less: | $8,541.83 | - | $0.00 | = ...... → | $8,564.83 |
| 11b. Over 90 days old: | $0.00 | - | $0.00 | = ...... → | $0.00 |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82. $8,564.83

**Part 4: Investments**

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

**None**

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or join venture**

Name of entity: % of ownership:

**None**

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

**None**

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

## Part 5: Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| 20. **Work in progress** | | | | |
| 21. **Finished goods, including goods held for resale** | | | | |
| 22. **Other inventory or supplies** | | | | |

23. **Total of Part 5**
Add lines 19 through 22. Copy the total to line 84.

24. **Is any of the property listed in Part 5 perishable?**
☑ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☑ No
☐ Yes

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☑ No
☐ Yes

## Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**
☑ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| **None** | | | |
| 29. Farm animals *Examples*: Livestock, poultry, farm-raised fish | | | |
| **None** | | | |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| **None** | | | |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| **None** | | | |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| **None** | | | |

33. **Total of Part 6**
Add lines 28 through 32. Copy the total to line 85.

34. **Is the debtor a member of an agricultural cooperative?**
☑ No
☐ Yes. Is any of the debtor's property stored at the cooperative?
  ☐ No
  ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**
☑ No
☐ Yes

36. **Is a depreciation schedule available for any of the property listed in Part 6?**
☑ No
☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 7: Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture** | | | |
| Office Furniture | $0.00 | Used Market Value | $2,000.00 |
| **40. Office fixtures** | | | |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| Ice Machine | $0.00 | Used Equipment | $300.00 |
| **42. Collectibles** *Examples*: Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| None | | | |

43. **Total of Part 7**
Add lines 39 through 42. Copy the total to line 86. **$2,300.00**

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 8: Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
☑ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| None | | | |
| **48. Watercraft, trailers, motors, and related accesories** Examples: Boats trailers, motors, floating homes, personal watercraft, and fishing vesels | | | |

None

49. Aircraft and accesories

None

50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)

| | | | | |
|---|---|---|---|---|
| 50.1 | 2 Golf Carts | $0.00 | | $5,000.00 |

51. **Total of Part 8**
Add lines 47 through 50. Copy the total to line 87. **$5,000.00**

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 9: Real Property

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has interest**

| | Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment, or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|---|
| 55.1 | Boat and RV Storage Lot | Fee Simple | | Cushman Wakefield Appraisal (6/19/2018) not counting about 5% increase due to increased sales | $5,100,000.00 |
| 55.2 | Boat and RV Storage Lot | Fee Simple | | Cushman Wakefield Appraisal (6/19/2018) not counting about 5% increase due to increased sales | $4,000,000.00 |

56. **Total of Part 9**
Add the current value on lines 55.1 through 55.6 and entries from any addition sheets. Copy the total to line 88. **$9,100,000.00**

57. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
☐ No
☑ Yes

## Part 10: Intangibles and Intellectual Property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets** | | | |
| None | | | |
| **61. Internet domain names and websites** | | | |
| None | | | |
| **62. Licenses, franchises, and royalties** | | | |
| None | | | |
| **63. Customer lists, mailing lists, or other compilations** | | | |
| None | | | |
| **64. Other intangibles, or intellectual property** | | | |
| None | | | |
| **65. Goodwill** | | | |
| None | | | |

66. **Total of Part 10**
Add lines 60 through 65. Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?
☑ No
☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
☑ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
☑ No
☐ Yes

## Part 11: All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

☐ No. Go to Part 12.
☑ Yes. Fill in the information below.

Current value of debtor's interest

71. **Notes receivable**

Description (include name of obligor)

**None**

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

**None**

73. **Interests in insurance policies or annuities**

**None**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

**Counterclaim for DPTA and Fraud**

**Nature of claim** **DPTA and Fraud**

**Amount requested**

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

**None**

76. **Trusts, equitable or future interests in property**

**None**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

**None**

78. **Total of Part 11**

Add lines 71 through 77. Copy the total to line 90. **$0.00**

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No
☐ Yes

**Part 12: Summary**

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $52,910.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $8,564.83 | |
| 83. **Investments.** *Copy line 17, Part 4.* | | |

Exhibit I

| | | | | |
|---|---|---|---|---|
| 84. | **Inventory.** *Copy line 23, Part 5.* | | | |
| 85. | **Farming and fishing-related assets.** *Copy line 33, Part 6.* | | | |
| 86. | **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $2,300.00 | | |
| 87. | **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $5,000.00 | | |
| 88. | **Real property.** *Copy line 56, Part 9.* ➔ | | $9,100,000.00 | |
| 89. | **Intangibles and intellectual property.** *Copy line 66, Part 10.* | | | |
| 90. | **All other assets.** *Copy line 78, Part 11.* | + $0.00 | | |
| 91. | **Total.** Add lines 80 through 90 for each column... 91a. | $68,774.83 | + 91b. $9,100,000.00 | |
| 92. | **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. | | | $9,168,774.83 |

Exhibit I

Fill in this information to identify the case:

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

## Part 1: List Creditors Who Have Secured Claims

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** |
|---|---|---|
| 2.1 Pender Capital | $7,000,000.00 | $9,100,000.00 |

**2.1 Creditor's name**
Pender Capital

**Creditor's mailing address**
11798 Wilshire Blvd. 460
Los Angeles, CA 90025

**Creditor's email address, if known**

**Date debt was incurred**

**Last 4 digits of account number** 1 0 1 6

**Do multiple creditors have an interest in the same property?**
☐ No.
☑ Yes. Specify each creditor, including this creditor, and its relative priority.

**For Asset: Boat and RV Storage Lot**
**1945 FM 157 Mansfield, TX 76063**

**1) Pender Capital**

2) Tarrant County Tax Assessor Collector

**For Asset: Boat and RV Storage Lot**
**305 Smith Mansfield, TX 76063**

**1) Pender Capital**

2) Tarrant County Tax Assessor Collector

**Describe debtor's property that is subject to a lien**
Boat and RV Storage Lot
1945 FM 157 Mansfield, TX 76063
Boat and RV Storage Lot
305 Smith Mansfield, TX 76063

**Describe the lien**
Deed of Trust

**Is the creditor an insider or related party?**
☑ No
☐ Yes.

**Is anyone else liable on this claim?**
☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.** $7,088,156.07

Exhibit I

Part 1: **Additional Page**

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| | Column A | Column B |
|---|---|---|
| | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** |
| 2.2 | $88,156.07 | $9,100,000.00 |

**Creditor's name**
Tarrant County Tax Assessor Collector

**Creditor's mailing address**
100 E. Weatherford
Fort Worth, TX 76196

**Creditor's email address, if known**

**Date debt was incurred** ______

**Last 4 digits of account number** ____

**Do multiple creditors have an interest in the same property?**
☐ No.
☑ Yes. Have you already specified the relative priority?

**For Asset:**
**Boat and RV Storage Lot**
**1945 FM 157 Mansfield, TX 76063**
☐ No. Specify each creditor, including this creditor, and its relative priority.
☑ Yes. The relative priority of creditors is specified on lines 2.1

**For Asset:**
**Boat and RV Storage Lot**
**305 Smith Mansfield, TX 76063**
☐ No. Specify each creditor, including this creditor, and its relative priority.
☑ Yes. The relative priority of creditors is specified on lines 2.1

**Describe debtor's property that is subject to a lien**
Boat and RV Storage Lot
1945 FM 157 Mansfield, TX 76063
Boat and RV Storage Lot
305 Smith Mansfield, TX 76063

**Describe the lien**
Property Tax

**Is the creditor an insider or related party?**
☑ No
☐ Yes.

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Exhibit I

## Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

**List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.**

**If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.**

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| Murphy IV, Garland<br>Smyzer Kaplan & Veselka, LLP<br>700 Louisiana St., Ste. 2300<br>Houston, TX 77002 | Line 2.1 | |
| Porter Hedges LLP<br>Eric M. English<br>Genevieve M. Graham<br>1000 Main St., 36th Foor<br>Houston, TX 77002 | Line 2.1 | |

Exhibit I

Fill in this information to identify the case:

Debtor name Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☐ Check if this is an amended filing

# Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims

12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases*(Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

### Part 1: List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507)

☑ No. Go to Part 2.

☐ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| 2.1 **Priority creditor's name and mailing address**<br><br>**Date or dates debt was incurred**<br><br>**Last 4 digits of account number** ____<br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) __ | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>**Basis for the claim:**<br><br>**Is the claim subject to offset?**<br>☐ No<br>☐ Yes | | |
| 2.2 **Priority creditor's name and mailing address**<br><br>**Date or dates debt was incurred**<br><br>**Last 4 digits of account number** ____<br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) __ | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>**Basis for the claim:**<br><br>**Is the claim subject to offset?**<br>☐ No<br>☐ Yes | | |

**Part 2: List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

**3.1** Nonpriority creditor's name and mailing address
Capital Premium Financing, Inc.
12235 S. 800 E
Draper, UT 84020

Date or dates debt was incurred ______

Last 4 digits of account number ____

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: ______

Is the claim subject to offset?
☑ No
☐ Yes

Amount of claim: unknown

**3.2** Nonpriority creditor's name and mailing address
Reynolds, Martha
605 Rutgers
Lancaster, TX 75134

Date or dates debt was incurred: Various

Last 4 digits of account number ____

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Loan

Is the claim subject to offset?
☑ No
☐ Yes

Amount of claim: $32,500.00

**3.3** Nonpriority creditor's name and mailing address
Snyder, Glenn
627 Mercury Ave.
Duncanville, TX 75137

Date or dates debt was incurred: Various

Last 4 digits of account number ____

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Legal Fees

Is the claim subject to offset?
☑ No
☐ Yes

Amount of claim: $10,000.00

**3.4** Nonpriority creditor's name and mailing address

Date or dates debt was incurred ______

Last 4 digits of account number ____

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: ______

Is the claim subject to offset?
☐ No
☐ Yes

**3.5** Nonpriority creditor's name and mailing address

Date or dates debt was incurred ______

Last 4 digits of account number ____

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: ______

Is the claim subject to offset?
☐ No
☐ Yes

Debtor **Mansfield Boat and RV Storage LLC** Case number *(if known)* **18-33926-HDH-11**
Name

**Part 4: Total Amounts of the Priority and Nonpriority Unsecured Claims**

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. | **Total claims from Part 1** | 5a. | $0.00 |
| 5b. | **Total claims from Part 2** | 5b. + | $42,500.00 |
| 5c. | **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $42,500.00 |

Exhibit I

Fill in this information to identify the case:

Debtor name Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11 Chapter 11

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

1. Does the debtor have any executory contracts or unexpired leases?

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.1 State what the contract or lease is for and the nature of the debtor's interest | Month to month storage leases; changes daily. | Various customers on month to month leases; changes daily |
| State the term remaining | Contract to be ASSUMED | |
| List the contract number of any government contract | 0 months | |
| 2.2 State what the contract or lease is for and the nature of the debtor's interest | | |
| State the term remaining | | |
| List the contract number of any government contract | | |
| 2.3 State what the contract or lease is for and the nature of the debtor's interest | | |
| State the term remaining | | |
| List the contract number of any government contract | | |
| 2.4 State what the contract or lease is for and the nature of the debtor's interest | | |
| State the term remaining | | |
| List the contract number of any government contract | | |
| 2.5 State what the contract or lease is for and the nature of the debtor's interest | | |
| State the term remaining | | |
| List the contract number of any government contract | | |

Exhibit I

Fill in this information to identify the case:

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☐ Check if this is an amended filing

Official Form 206H

# Schedule H: Codebtors

12/15

**Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.**

1. **Does the debtor have any codebtors?**

   ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

   ☑ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors,** ***Schedules D-G.*** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | Reynolds, Larry | 305 Smith St. (Street)<br>Mansfield, TX 76063 (City, State, ZIP Code) | Pender Capital | ☑ D<br>☐ E/F<br>☐ G |
| 2.2 | The Poyner Wilkins Generational Trust | 605 Rutgers Dr. (Street)<br>Fort Worth, TX 76134 (City, State, ZIP Code) | Pender Capital | ☑ D<br>☐ E/F<br>☐ G |
| 2.3 | | Street<br>City State ZIP Code | | |
| 2.4 | | Street<br>City State ZIP Code | | |
| 2.5 | | Street<br>City State ZIP Code | | |

Debtor Mansfield Boat and RV Storage LLC Case number (*if known*) 18-33926-HDH-11

Name

Exhibit I

## Additional Page if Debtor Has More Codebtors

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.6 ______ | ______ Street<br>______<br>______ City State ZIP Code | | |

Exhibit I

Fill in this information to identify the case:

Debtor name Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11 Chapter 11

☐ Check if this is an amended filing

Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals

12/15

## Part 1: Summary of Assets

1. ***Schedule A/B: Assets–Real and Personal Property*** (Official Form 206A/B)

   1a. **Real Property:**
   Copy line 88 from *Schedule A/B*.......... $9,100,000.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*.......... $68,774.83

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.......... $9,168,774.83

## Part 2: Summary of Liabilities

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.......... $7,088,156.07

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.......... $0.00

   3b. **Total amount of claims of non-priority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.......... + $42,500.00

4. **Total liabilities**.......... $7,130,656.07
   Lines 2 + 3a + 3b

Exhibit I

Fill in this information to identify the case:

Debtor name Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206A-Summary)
- ☐ *Amended Schedule* ________________
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration ________________

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/18/2018
MM/ DD/ YYYY

X [signature]
Signature of individual signing on behalf of debtor

Larry Reynolds
Printed name

General Manager
Position or relationship to debtor

**Exhibit J**

Fill in this information to identify the case:

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☑ Check if this is an amended filing

# Official Form 206A/B

## Schedule A/B: Assets — Real and Personal Property

**12/15**

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

**For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.**

### Part 1: Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2. **Cash on hand** | |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1 **Wells Fargo Bank** | **Checking account** | | **$0.00** |

4. **Other cash equivalents** *(Identify all)*

Name of institution (bank or brokerage firm)

**None**

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. **$0.00**

### Part 2: Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

**Current value of debtor's interest**

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

**None**

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

**None**

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.

## Part 3: Accounts receivable

10. **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.
☐ Yes. Fill in the information below.

**Current value of debtor's interest**

11. **Accounts Receivable**

| | face amount | | doubtful or uncollectible accounts | | Current value of debtor's interest |
|---|---|---|---|---|---|
| 11a. 90 days old or less: | $0.00 | - | $0.00 | = ...... ➔ | $0.00 |
| 11b. Over 90 days old: | $0.00 | - | $0.00 | = ...... ➔ | $0.00 |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

## Part 4: Investments

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

**None**

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or join venture**

Name of entity: % of ownership:

**None**

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

**None**

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

## Part 5: Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| 20. **Work in progress** | | | | |
| 21. **Finished goods, including goods held for resale** | | | | |
| 22. **Other inventory or supplies** | | | | |

23. **Total of Part 5**
Add lines 19 through 22. Copy the total to line 84.

24. **Is any of the property listed in Part 5 perishable?**
☑ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☑ No
☐ Yes

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☑ No
☐ Yes

## Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| **None** | | | |
| 29. **Farm animals** *Examples*: Livestock, poultry, farm-raised fish | | | |
| **None** | | | |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| **None** | | | |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| **None** | | | |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| **None** | | | |

33. **Total of Part 6**
Add lines 28 through 32. Copy the total to line 85.

34. **Is the debtor a member of an agricultural cooperative?**
☑ No
☐ Yes. Is any of the debtor's property stored at the cooperative?
  ☐ No
  ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**
☑ No
☐ Yes

36. **Is a depreciation schedule available for any of the property listed in Part 6?**
☑ No
☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

## Part 7: Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**
- ☐ No. Go to Part 8.
- ☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| **Office Furniture** | **$0.00** | **Used Market Value** | **$2,000.00** |
| 40. **Office fixtures** | | | |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| **Ice Machine** | **$0.00** | **Used Equipment** | **$300.00** |
| 42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| **None** | | | |

43. **Total of Part 7**
Add lines 39 through 42. Copy the total to line 86. **$2,300.00**

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
- ☑ No
- ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

## Part 8: Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**
- ☐ No. Go to Part 9.
- ☑ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| **None** | | | |
| 48. **Watercraft, trailers, motors, and related accesories** Examples: Boats trailers, motors, floating homes, personal watercraft, and fishing vesels | | | |

None

49. **Aircraft and accesories**

None

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

| | | | | |
|---|---|---|---|---|
| 50.1 | **2 Golf Carts** | **$0.00** | | **$5,000.00** |

51. **Total of Part 8**

Add lines 47 through 50. Copy the total to line 87. **$5,000.00**

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 9: Real Property

54. **Does the debtor own or lease any real property?**

☑ No. Go to Part 10.
☐ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has interest**

| **Description and location of property** Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment, or office building), if available. | **Nature and extent of debtor's interest in property** | **Net book value of debtor's interest** (Where available) | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|---|
| **None** | | | | |

56. **Total of Part 9**

Add the current value on lines 55.1 through 55.6 and entries from any addition sheets. Copy the total to line 88.

57. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 10: Intangibles and Intellectual Property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

60. **Patents, copyrights, trademarks, and trade secrets**

**None**

61. **Internet domain names and websites**

**None**

62. **Licenses, franchises, and royalties**

**None**

63. **Customer lists, mailing lists, or other compilations**

**None**

64. **Other intangibles, or intellectual property**

**None**

65. **Goodwill**

**None**

66. **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☑ No
☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 11: All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

☐ No. Go to Part 12.
☑ Yes. Fill in the information below.

**Current value of debtor's interest**

71. **Notes receivable**

Description (include name of obligor)

**None**

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

**None**

73. **Interests in insurance policies or annuities**

**None**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

**The Court has ordered Larry Reynolds to pay $141,306 to the Trustee. At least approximately 45,000 of that amount is disputed by Reynolds as having been "double counted."** — **$96,306.00**

**Nature of claim** — **Order**

**Amount requested** — **$96,306.00**

**Claim against Pender**

**Nature of claim** — **DPTA and Fraud and tortious interference, wrongful foreclosure v. Pender (amount requested $9,800,000, Value unknown)**

**Amount requested**

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

**None**

76. **Trusts, equitable or future interests in property**

**None**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

**None**

78. **Total of Part 11**

Add lines 71 through 77. Copy the total to line 90. — **$96,306.00**

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 12: Summary

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | | |
| 83. **Investments.** *Copy line 17, Part 4.* | | |
| 84. **Inventory.** *Copy line 23, Part 5.* | | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $2,300.00 | |

Exhibit J
Debtor Mansfield Boat and RV Storage LLC Case number (if known) 18-33926-HDH-11
Name

| | | | |
|---|---|---|---|
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $5,000.00 | | |
| 88. **Real property.** *Copy line 56, Part 9.* ➔ | | | |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | | | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $96,306.00 | | |
| 91. **Total.** Add lines 80 through 90 for each column... 91a. | $103,606.00 | + 91b. $0.00 | |
| 92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. | | | $103,606.00 |

Official Form 206A/B Schedule A/B: Assets — Real and Personal Property page 10

Exhibit J

Fill in this information to identify the case:

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☑ Check if this is an amended filing

# Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

☑ No. Check this box and submit page 1 of this form to the court with debtor’s other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

### Part 1: List Creditors Who Have Secured Claims

| | *Column A*<br>**Amount of claim**<br>Do not deduct the value of collateral. | *Column B*<br>**Value of collateral that supports this claim** |
|---|---|---|
| **2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. | | |
| **3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.** | **$0.00** | |

Exhibit J

Debtor Mansfield Boat and RV Storage LLC Case number (*if known*) 18-33926-HDH-11
Name

## Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

**List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.**

**If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.**

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | Line ____ | ___ ___ ___ ___ |

Official Form 206D Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property** page 2 of 2

Exhibit J

**Fill in this information to identify the case:**

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☑ Check if this is an amended filing

# Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims

12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases*(Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

### Part 1: List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507)
   - ☐ No. Go to Part 2.
   - ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | Total claim | Priority amount |
|---|---|---|---|---|
| 2.1 | **Internal Revenue Service**<br>**Centralized Insolvency Operations**<br>**Po Box 7346**<br>**Philadelphia, PA 19101-7346**<br><br>**Date or dates debt was incurred**<br>________<br>**Last 4 digits of account number** __ __ __ __<br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (8)<br>**Remarks:** Debtor owes no payroll taxes. All have been paid by its outside management companies. Also most years predate debtor's initial operation. | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☑ Disputed<br><br>**Basis for the Claim:** 2015 - 2018 940/941 taxes<br><br>**Is the claim subject to offset?**<br>☑ No<br>☐ Yes | $33,700.00 | $33,700.00 |
| 2.2 | **Lusky & Associates, PC**<br>**5473 Blair Rd.**<br>**Dallas, TX 75231**<br><br>**Date or dates debt was incurred**<br>________<br>**Last 4 digits of account number** __ __ __ __<br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) __ | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the Claim:** ________<br><br>**Is the claim subject to offset?**<br>☑ No<br>☐ Yes | $12,324.83 | $12,324.83 |

## Part 1: Additional Page

**2.3 Priority creditor's name and mailing address**

Mansfield ISD
c/o Perdue Brandon et al
500 E. Border St. 640
Arlington, TX 76010

**Date or dates debt was incurred**

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (8)

**Remarks:** Debtor believes this was included in Pender's bid amount when it foreclosed on debtor's property.

**As of the petition filing date, the claim is:** *Check all that apply.*

- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Basis for the Claim:** 2018 Property Taxes

**Is the claim subject to offset?**

- ☑ No
- ☐ Yes

$88,157.07 | $88,157.07

**2.4 Priority creditor's name and mailing address**

Pender Capital
11798 Wilshire Blvd. 460
Los Angeles, CA 90025

**Date or dates debt was incurred** 2/28/2019

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) ____

**Remarks:** February 2019 Adequate Protection Payment

**As of the petition filing date, the claim is:** *Check all that apply.*

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the Claim:**

**Is the claim subject to offset?**

- ☑ No
- ☐ Yes

$35,000.00 | $35,000.00

**2.5 Priority creditor's name and mailing address**

Tarrant County Tax Assessor Collector
100 E. Weatherford
Fort Worth, TX 76196

**Date or dates debt was incurred** 2018

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (8)

**Remarks:** Debtor believes this was included in Pender's bid amount when it foreclosed on debtor's property.

**As of the petition filing date, the claim is:** *Check all that apply.*

- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Basis for the Claim:**

**Is the claim subject to offset?**

- ☑ No
- ☐ Yes

$74,703.78 | $74,703.78

Exhibit J

Debtor **Mansfield Boat and RV Storage LLC** Case number *(if known)* **18-33926-HDH-11**
Name

**Part 1:** Additional Page

**2.6** **Priority creditor's name and mailing address**
**United States Trustee**
**1100 Commerce St. 976**
**Dallas, TX 75242**

**Date or dates debt was incurred**

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) ___

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the Claim:** **Ch 11 Trustee Fees**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**$2,926.28** **$2,926.28**

Official Form 206E/F **Schedule E/F: Creditors Who Have Unsecured Claims** page 3 of 6

## Part 2: List All Creditors with NONPRIORITY Unsecured Claims

**3. List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

**Amount of claim**

**3.1 Nonpriority creditor's name and mailing address**
Ainsworth, Breeman Neal
2521 E Mtn Village Dr. B233
Wasilla, AK 99654

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** Legal Fees

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**$180,000.00**

**3.2 Nonpriority creditor's name and mailing address**
Capital Premium Financing, Inc.
12235 S. 800 E
Draper, UT 84020

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** ____

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**unknown**

**3.3 Nonpriority creditor's name and mailing address**
Reynolds, Martha
605 Rutgers
Lancaster, TX 75134

**Date or dates debt was incurred** Various
**Last 4 digits of account number** ____

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** Loan

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**$32,500.00**

**3.4 Nonpriority creditor's name and mailing address**
Snyder, Glenn
627 Mercury Ave.
Duncanville, TX 75137

**Date or dates debt was incurred** Various
**Last 4 digits of account number** ____

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** Legal Fees

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**$10,000.00**

**3.5 Nonpriority creditor's name and mailing address**
____

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** ____

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

**Part 3:** List Others to Be Notified About Unsecured Claims

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| | Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | Eric English<br>Porter Hedges LLP<br>1000 Main St., 36th Floor<br>Houston, TX 77002 | Line 2.4<br>❑ Not listed. Explain | |
| 4.2 | Linebarger, Goggin, Blair & Sampson, LLP<br>2777 N Stemmons Fwy Ste 1000<br>Dallas, TX 75207-2328 | Line 2.5<br>❑ Not listed. Explain | |

Debtor **Mansfield Boat and RV Storage LLC** Case number *(if known)* **18-33926-HDH-11**
Name

Exhibit J

## Part 4: Total Amounts of the Priority and Nonpriority Unsecured Claims

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. | **Total claims from Part 1** | 5a. | **$246,811.96** |
| 5b. | **Total claims from Part 2** | 5b. + | **$222,500.00** |
| 5c. | **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | **$469,311.96** |

Exhibit J

Fill in this information to identify the case:

Debtor name: Mansfield Boat and RV Storage LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known): 18-33926-HDH-11

☑ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206A-Summary)
- ☑ *Amended Schedule* Amended Schedules A/B, D, and E/F
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 05/06/2019
MM/ DD/ YYYY

X [signature]
Signature of individual signing on behalf of debtor

Larry Reynolds
Printed name

General Manager
Position or relationship to debtor